**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

GALIB MIRZA                                                                                PLAINTIFF

V.                                          CASE NO.: 2:23-CV-203

SHELTER MUTUAL INSURANCE
COMPANY; AND JOHN DOES 1-10                                               DEFENDANTS

<u>**AMENDED COMPLAINT**</u>

COMES NOW the Plaintiff, Galib Mirza, by and through his attorneys, RAINWATER, HOLT & SEXTON, P.A., and for his Amended Complaint against the Defendants, states and alleges the following:

### I.  <u>RESIDENCY & PARTIES</u>

1.    Plaintiff Galib Mirza, an individual at all time relevant, was a resident of the County of Los Angeles, in the State of California.

2.    Defendant Shelter Mutual Insurance Company, was at all times relevant a foreign corporation registered and licensed to sell insurance in the State of Arkansas, with its principal place of business in Missouri. The Defendant's registered agent for service is Corporation Service Company, 300 S. Spring St. Suite 900, Little Rock, AR 72201.

3.    The identity and residency of Defendants John Does 1-10 are unknown to the Plaintiff, and therefore, Plaintiff sues said Separate Defendants under these fictitious names. On information and belief, John Does 1-10, (I) are directly associated with the wrongful acts and omissions described herein, although the full extent of their involvement is unknown at

this time, OR (II) conspired  with the named  parties in this case in the performance of the wrongful acts and omissions described below, although the full extent of their involvement is unknown at this time, OR, (Ill) acted as principals or agents, actual or ostensible, or other named parties in this case associated with the wrongful acts and omissions described  below, although the full extent of their involvement is not known at this time. Plaintiff thus believes that John Does l-10, are liable for the damages and for other relief sought in this case as participants, co-conspirators, principals or agents, or are otherwise necessary or indispensable party to the adjunction of the issues involved in this case.   When the true names and capacities of John Does 1-10 have been ascertained, appropriate amendments of this Amended Complaint will be filed.

4.    Plaintiff's counsel executed a "John Doe Affidavit" in accordance with A.C.A. §16-56-125, and is attached hereto as **Exhibit A**

.                              **II. JURISDICTION AND VENUE**

5.    Venue and jurisdiction properly lie with this Court, as order by the United States District Court of the Central Division of California, 2:23-cv-02141-HDV-AGR [Doc.37]. See, 2:23-CV-203 [Doc. 37].

6.    This Court has jurisdiction pursuant to Defendant's Notice of Removal filed December 22, 2022, and pursuant to 28 U.S.C. §§ 1441(a) and 1332 due to complete diversity of the parties and the amount in controversy exceeding $75,000.00.

### III.  BASIC PREMISE

7.    This is a breach of contract case which arises from a written motor vehicle insurance policy contract written by Shelter Mutual Insurance Company covering Plaintiff Mirza. Said underlying insurance policy contract contains underinsured motorist coverage up to the amount of $100,000. Plaintiff's demands to Shelter Mutual Insurance Company to make a reasonable offer of settlement pursuant to the policy contract's terms and conditions, Shelter Mutual Insurance Company has refused Plaintiff's request and demand.

### IV.  FACTS

8.    On or about December 23, 2020, Plaintiff GALIB MIRZA, while traveling east bound at or near the intersection Wilsheir Boulevard and Le Doux Road, in the City of Beverly Hills, in the County of Los Angeles, in the State of California in a 2020 Jeep Wrangler when Tortfeasor Jose Guadalupe Flores Saucedo ("Saucedo") turned in left in front of him causing a collision where Plaintiff suffered bodily injuries.

9.    It is undisputed that Plaintiff had the right of way, and that Tortfeasor Saucedo failed to yield the right-of-way.

10.    Tortfeasor Saucedo's limits of liability coverage for bodily injury were exhausted upon payment of $15,000 to Plaintiff for the injuries he sustained in the crash described herein on December 23, 2020.  True and correct copies of Tortfeasor Saucedo's liability declarations page and the check issued for bodily injuries are attached hereto and incorporated by reference respectively as **Exhibits B and C.**

11.    Tortfeasor Saucedo' liability coverage limit of $15,000 per person for bodily injury was insufficient to cover the bodily injuries sustained by Plaintiff.

12.    Defendant SHELTER MUTUAL INSURANCE COMPANY, and John Does 1 to

10, inclusive, issued a policy of automobile insurance, policy number 03-1-1030652405, to named insured Monzamel Hawk, covering the 2020 Jeep Wrangler, and covering Plaintiff GALIB Mirza.  Said policy of insurance also included underinsurance motorist benefits, up to the amount of $100,000 covering Plaintiff GALIB MIRZA. Pursuant to such written contract of insurance and at all times relevant to this action, the premiums were timely paid.

13.     Plaintiff's front right bumper struck Tortfeasor Saucedo's front passenger side damaging both vehicles.

14.    Tortfeasor Saucedo was negligent in the following particulars:

(a)    Failing to yield the right-of-way to all vehicles approaching from the opposite direction, in violation of California Vehicle Code 21801(a);

(b)    Failing to keep a lookout for other vehicles, in violation of the common law of California;

(f)    Failing to keep his vehicle under control, in violation of the common law of California;

(g)    Otherwise failing to exercise ordinary care under the circumstances;

(h)    Failure to yield the right of way to oncoming traffic in violation of the common law of California.

13.    As a result of the collision, Plaintiff Mirza sustained personal injuries and damages in excess of the $15,000 limits of liability coverage paid by Tortfeasor Saucedo's liability coverage. True and correct copies of Tortfeasor Saucedo's liability declarations page and the check issued for bodily injuries are attached hereto and incorporated by reference respectively as **Exhibits B and C**.

14.    Defendant SHELTER MUTUAL INSURANCE COMPANY, and John Does 1 to 10, inclusive, issued a policy of automobile insurance, policy number 03-1-1030652405, to

4

named insured Monzamel Hawk, covering the 2020 Jeep Wrangler, and covering Plaintiff GALIB Mirza. Said policy of insurance also included underinsurance motorist benefits, up to the amount of $100,000 covering Plaintiff GALIB MIRZA. Pursuant to such written contract of insurance and at all times relevant to this action, the premiums were timely paid. True and correct copies of SHELTER MUTUAL INSURANCE COMPANY'S policy number 03-1-10306524-5 Auto Policy Declarations page, the Automobile Insurance Policy, and the corresponding Underinsured Motorists Endorsement collectively as **Exhibit D.**

## V.  <u>CAUSE OF ACTION - BREACH OF CONTRACT</u>

15.     At the time of the incident complained of herein, Defendant Shelter Mutual Insurance Company had in effect a policy of insurance with underlying under insured motorist coverage providing coverage to Plaintiff Mirza.  *See,* **Exhibit D.**

16.     The Shelter Mutual Insurance under insured motorist policy provides that, in the event Plaintiff Mirza should be involved in an incident caused by the negligence of an underinsured motorist, his damages would be compensated in an amount not to exceed the limits of said underlying UIM coverage ($100,000.00)

17.     Defendant Shelter Mutual Insurance Company received an additional premium for this coverage of Plaintiff Mirza, and Defendant Shelter Mutual Insurance Company accepted this premium.

18.     Under the terms of the Shelter Mutual Insurance Company under insured motorist policy, Tortfeasor Saucedo was an underinsured motorist.

19.     Under the terms of the Shelter Mutual Insurance Company under insured motorist policy, Defendant Shelter Mutual Insurance Company has a duty to pay benefits to Plaintiff in a

sum consistent with his damages, subject to limits.

20.    Plaintiff has requested reasonable settlement offers and that Defendant Shelter Mutual Insurance Company pay within the underlying under insured motorist limits of $100,000.00 pursuant to the terms of the policy, but Defendant Shelter Mutual Insurance Company has refused the Plaintiff's request and demand.

21.    Upon information and belief, as part of its valuation process, Defendant Shelter Mutual Insurance Company   has "devalued" the Plaintiff's claims and has not fully considered some or all of the medical expenses and pain and suffering Plaintiff has incurred because of the negligence of Tortfeasor Saucedo.

22.    There is no legitimate legal basis for Shelter Mutual Insurance Company's continuing failure to comply with the terms of the policy.   Shelter Mutual Insurance Company is in breach of the insurance policy contract.

## VI.   PROXIMATE CAUSATION

23.    The negligence of Tortfeasor Saucedo, an underinsured motorist, was an actual and proximate cause of the collision described herein and of the personal injuries and damages sustained by the Plaintiff.

24.     Defendant Shelter Mutual Insurance Company's refusal to pay reasonable settlement pursuant to the attached policy's under insured motorist coverage is the actual and proximate cause of the breach of the insurance policy contract between the Plaintiff and Shelter Mutual Insurance Company, and Plaintiff's damages related thereto.

## VII.   INJURIES AND COMPENSATORY DAMAGES

25.    All allegations previously plead herein are re-alleged as though stated

word-for-word.

26.     Plaintiff Mirza sustained personal injuries as a result of the collision of on December 23, 2020.

27.     Plaintiff Mirza is entitled to the following damages:

(a)     the nature, extent, duration, and permanency of his injuries;

(b)     the full extent of the injuries he sustained;

(c)     the expense of his medical care, treatment and services received, including transportation, board and lodging expenses and those expenses that are reasonably certain to be required in the future for his own injuries;

(d)     any pain, suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future;

(e)     the value of any earnings, earning capacity, profits, or salary lost in the past and that are reasonably certain to be lost in the future;

(f)     travel expenses, lost earnings, and family pain and suffering;

(g)     the visible results of his injuries; and

(h)     any property damage he sustained.

28.     Additionally, the Plaintiff is entitled to damages in the amount of 12% of the awarded damages from the underinsured motorist claim, plus a reasonable attorney's fee for the prosecution and collection of the loss, pursuant to Ark. Code Ann. § 23-79-208, pre and post judgment interest, and costs and expenses for prosecuting said claims.

29.     The injuries and damages described herein have been suffered in the past and will be continuing in the future.

## VIII.    DEMAND FOR JURY TRIAL

30.     Plaintiff Mirza hereby demands a trial by jury.

## IX.    DEMAND & PRAYER

31.     WHEREFORE, Plaintiff prays that he recover judgment against Defendant for the underlying underinsured motorist benefits limit ($100,000); pre and post judgment interest at the maximum rate allowed by law; for all expenses and costs; 12% penalty of the awarded damages pursuant to Ark. Code Ann. § 23-79-208; reasonable attorney's fees; and for all other relief to which they may be entitled.

Respectfully Submitted,

Attorneys for Plaintiff


By:     Rob Beard_____
        Robert L. Beard (Ark. Bar No. 2002109)
        RAINWATER, HOLT & SEXTON, P.A.
        P.O. Box 17250
        Little Rock, AR   72222
        Telephone:    (501) 868-2500
        Telefax:       (501) 868-2505

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

**GALIB MIRZA**                                                                                     **PLAINTIFF**

**V.**                                               **CASE NO.: 2:23-CV-203**

**SHELTER MUTUAL INSURANCE**
**COMPANY; AND JOHN DOES 1-10**                                            **DEFENDANTS**

### JOHN DOE AFFIDAVIT

| | | |
|---|---|---|
| **STATE OF ARKANSAS** | ) | |
| | ) | **ss** |
| **COUNTY OF PULASKI** | ) | |

Comes now, Rob Beard, and states, upon oath, the following:

1.     I represent Plaintiff, Galib Mirza, in the above matter.

2.     Plaintiff, Galib Mirza, are seeking a judgement against unknown tortfeasors.

3.     The names of the unknown tortfeasors in this action will be designated by the pseudo-names John Doe Nos. 1-10 and will be named as such in the Plaintiff's Complaint.

4.     Upon determining the identities of John Doe Nos. 1-10, Plaintiff's Complaint will be amended by substituting the real name for the pseudo-name.

5.     This affidavit is made pursuant to A.C.A. § 16-56-125.

_____
Rob Beard

1/17/2024
_____
Date


SWORN AND SUBSCRIBED before me on the 17ᵗʰ day of January, 2024.

_____
Notary Public

My commission expires:

July 29, 2024
_____

LESLIE THOMPSON
FAULKNER COUNTY
NOTARY PUBLIC - ARKANSAS
My Commission Expires July 29, 2024
Commission No. 12400265

1
Exhibit A

# Interinsurance Exchange of the Automobile Club

## Automobile Insurance Policy Coverages and Limits
### Renewal Declarations



We are pleased to offer you a renewal for your automobile insurance policy. To renew your policy, send at least the minimum payment on or before the due date. Insurance is in effect only for the vehicles, coverages, and limits of liability shown on this declarations page and as set forth in the insurance policy and endorsements. These declarations, together with the contract and the endorsements in effect, complete your policy. If any change to your policy or to the information we have on file results in a premium decrease during the policy period, the Interinsurance Exchange reserves the right to apply any refund due to your outstanding balance.

**NAMED INSURED (Item 1.)**

JOSE GUADALUPE FLORESSAUCEDO

**AUTO POLICY NUMBER: CAA 151685125**
POLICY PERIOD (PACIFIC STANDARD TIME)
**POLICY EFFECTIVE DATE:**    **04-10-21**   12:01 A.M.
**POLICY EXPIRATION DATE:**    **04-10-22**   12:01 A.M.

**VEHICLES**

| VEH. NO. | YEAR | MAKE | MODEL | IDENTIFICATION NUMBER | VEHICLE USE | GARAGE ZIP CODE | ANNUAL** MILES | VERIFIED MILEAGE | SALVAGE |
|---|---|---|---|---|---|---|---|---|---|
| 2 | 2004 | CHEV | TRAILBLAZER | 1GNDS13S742273131 | PLEASURE | 91306 | 7,501 - 10,000 | VERIFIED | NO |

**COVERAGES AND LIMITS**
Coverage is not in effect unless a premium or the word "included" is shown.

**ANNUAL PREMIUMS**

| COVERAGES | LIMITS OF LIABILITY | | Vehicle 2 | Vehicle | Vehicle | Vehicle | Vehicle |
|---|---|---|---|---|---|---|---|
| **Liability** | | | | | | | |
| Bodily Injury | $15,000 | each person/ $30,000 each occurrence | | | | | |
| Property Damage | $25,000 | each occurrence | | | | | |
| **Medical** | | | No Coverage | | | | |
| **Physical Damage** (Actual Cash Value unless otherwise stated, less deductible) | | | | | | | |
| | Vehicle 2 | Vehicle  Vehicle  Vehicle  Vehicle | | | | | |
| Comprehensive | No Coverage | | No Coverage | | | | |
| (Less Deductible) | No Coverage | | | | | | |
| Collision | No Coverage | | No Coverage | | | | |
| (Less Deductible) | No Coverage | | | | | | |
| Car Rental Expense | | | | | | | |
| (Per Day) | No Coverage | | No Coverage | | | | |
| **Uninsured Motorist** | | | | | | | |
| Bodily Injury - | $15,000 | each person/ $30,000 each accident | | | | | |
| Uninsured & Underinsured Vehicles | | | | | | | |
| Uninsured Deductible Waiver | | | No Coverage | | | | |
| Uninsured Collision | | | | | | | |
| **Total Premium** | | | | | | | |

**PREMIUM DISCOUNTS**
Please refer to the enclosed document entitled "Premium Discounts Applied to Your Automobile Policy."

**\* If at any time you choose to pay less than the full balance outstanding, finance charges of up to 1.5% per month of the balance outstanding will apply as explained in your billing statements, which are part of these declarations.**

**\*\* To see the annual mileage for your expiring policy, please refer to the "Notice of Annual Mileage" page contained in your renewal package.**

"No Coverage" indicates coverage not purchased.

| Total Annual Premium* (Includes all applicable discounts.) | |
|---|---|
| Less Policyholder Savings Dividend | |
| **Net Premium*** | |



CAA0200A
E20190107
030421

**PROCESS DATE 03-03-21**

Exhibit B
**PLEASE ATTACH TO YOUR POLICY**

**(SEE REVERSE)**

JAWLAKIAN LAW GROUP APC

| INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB | | | | | Check No:    0006588784<br>Issued Date:   10/20/2021 | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Date of Occurrence<br>12/23/20 | COVType<br>BI | COVType | Type of Payment<br>CLAIM | Payment/Withholding Information | | |
| Named Insured (Last, First, Middle)<br>JOSE FLORESSAUCEDO | | | | | Total Payment Amount: | | $15,000.00 |
| | | | | | Federal Withholding: | | $0.00 |
| Name of Claimant<br>GALIBMIRZA | | | | | State Withholding: | | $0.00 |
| | | | | | Total Check Amount: | | $15,000.00 |
| Payment Memo<br><br>Bodily Injury Settlement | | | | | | | |
| Handling Adjuster<br>Fred Rogers | | | Adjuster Number<br>661590 | | District Office<br>VALENCIA BI3 | | |
| Telephone<br>661-291-3863 | Envelope Number<br>57604 | | Document | U.S.<br>YES | Stop Code | | |

HARLAND CLARKE   10421   REV 10/15   10106234

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB
P O Box 25001, Santa Ana, CA 92799-5001

Bank of America

90-4182
1211 CA

10/20/2021     No. 0006588784

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON W ITE PAPER

Pay    Fifteen Thousand Dollars And Zero Cents*****    $   ***15,000.00

TO THE
ORDER OF
JAWLAKIAN LAW GROUP APC & GALIB MIRZA
16130 VENTURA BLVD STE 550
ENCINO CA 91436 2571

Memo    Type: CLAIM CHECK Office: VALENCIA BI3
Insured: JOSE FLORESSAUCEDO
Claimant: GALIB MIRZA
Claim Number: 014505818 Date of Occurrence: 12/23/20 Coverage Type: BI

AUTHORIZED SIGNATURE

CASH CHECK PROMPTLY   VOID AFTER 6 MONTHS

Exhibit C



**Please remove these cards by cutting on the solid lines.**

**Automobile Insurance Identification Card**
This evidence of insurance must be carried in the insured motor vehicle for production upon demand.

Shelter Mutual Insurance Company          1-800-SHELTER (743-5837)
1817 W Broadway          Columbia MO  65218-0001
Agent: SHELTER INSURANCE COMPANIES          870-338-3061

Policy No: 03-1-10306524-5
Effective Date: 07/10/2020          Expiration Date: 12/27/2020
2020 JEEP WRNGLR UNLMTD SAHARA          VIN:1C4HJXEG0LW211263
NAIC # 23388
Excluded Drivers: NONE

MOZAMEL HAWK
1207 W HIGHWAY 49
WEST HELENA AR 72390-1716



ARP-3

---

**Automobile Insurance Identification Card**
This evidence of insurance must be carried in the insured motor vehicle for production upon demand.

Shelter Mutual Insurance Company          1-800-SHELTER (743-5837)
1817 W Broadway          Columbia MO  65218-0001
Agent: SHELTER INSURANCE COMPANIES          870-338-3061

Policy No: 03-1-10306524-5
Effective Date: 07/10/2020          Expiration Date: 12/27/2020
2020 JEEP WRNGLR UNLMTD SAHARA          VIN:1C4HJXEG0LW211263
NAIC # 23388
Excluded Drivers: NONE

MOZAMEL HAWK
1207 W HIGHWAY 49
WEST HELENA AR 72390-1716

ARP-3

Exhibit D

**Keep one card in your motor vehicle and carry the other card with you.**




Shelter Mutual Insurance Company
1817 W Broadway
Columbia, MO 65218
1-800-SHELTER (743-5837)

# Auto Policy Declarations and Policy Schedule

**Named Insured:**
MOZAMEL HAWK

| | |
|---|---|
| **Policy Number:** | 03-1-10306524-5 |
| **Effective Date:** | 07-10-2020 (11:03 AM CST) |
| **Expiration Date:** | 12-27-2020 (12:01 AM CST) |

**Agent:** SHELTER INSURANCE COMPANIES
03-0E661-75
209 N SEBASTIAN
WEST HELENA AR 72390
870-338-3061

These **Declarations** are part of your policy and replace all prior **Declarations**.

| Vehicle | Vehicle ID |
|---|---|
| 2020 JEEP WRNGLR UNLMTD SAHARA | 1C4HJXEG0LW211263 |

**Additional Listed Insured:**
Mozamel Hawk; Nahida Hawk; Galib Mirza; Tamanna Basri

| Coverages | Limits and Deductibles | Endorsement Number | Premium |
|---|---|---|---|
| A. Bodily Injury | $100,000 Each Person   $300,000 Each Accident | | |
| B. Property Damage | $100,000 Each Accident | | |
| C. Medical Payments | $5,000 Each Person | | |
| D. Accidental Death | $5,000 Each Person | | |
| E. Uninsured Motorists | $100,000 Each Person   $300,000 Each Accident | | |
| F. Collision | $1,000 Deductible | | |
| G. Comprehensive | $250 Deductible | | |
| Income Disability Benefits Endorsement | | A-928.7-A | |
| Roadside Assistance | $100 Limit | A-151.2-A | |
| Underinsured Motorists Endorsement | $100,000 Per Person   $300,000 Per Accident | A-110.3-A | |
| Uninsured Motorists Property Damage Endorsement | $200 Deductible   $100,000 Limit | A-117.8-A | |

**Total for Term (This is Not a Bill):**

**Discounts:**
The following discounts have been applied to this policy and are reflected in the above premiums, resulting in a premium savings of
**$190.25**       *Passive Restraint; Pay-In-Full Discount*

| Policy forms and additional endorsements attached to this policy | Number |
|---|---|
| Automobile Insurance Policy | A-19.4-A |
| New Vehicle Replacement Coverage | A-150-A |
| Mutual Policy Notification | S-18-S |

Exhibit D

| Policy forms and additional endorsements attached to this policy | Number |
|---|---|
| Amendatory Endorsement - Arkansas | A-132.3-A |

**Loss Payee:**

CHRYSLER CAPITAL
PO BOX 961275
FORT WORTH TX 76161-0275

(For Office Use Only)
Transaction: PC SL                Tier: 0700
H. O. CODE: 1,365.85
Policy ID: 43006987934            Date Issued:  07-10-2020
Policy Term: Six Months                         '05242020'
Rate Class: DF/1                  Territory: 25
Cost Symbol: 38                   Package CD: 1
County: 107

A-2.56-A

**End of Declarations**

Exhibit D

Page  2



**SHELTER
INSURANCE
COMPANIES**

Courtney Abromovich
Casualty Adjuster
PO Box 6008, Columbia, MO 65205
Phone: 573-214-4419
Fax: 888-742-5671
CAbromovich@shelterinsurance.com

February 22, 2021

Jawlakian Law Group

RE:    CLAIM NUMBER:      AT2941139
       DATE OF LOSS:       December 23, 2020
       INSURED:             Mozamel Hawk
       YOUR CLIENT:        Galib Mirza

Dear Mr. Jawlakian,

We have received your letter of representation for Galib Mirza. Please see the enclosed Declarations Sheet our insured Mozamel Hawk.

Please contact me with any questions. Thank you for your cooperation.

Sincerely,

Courtney Abromovich
Claims Department

# AUTOMOBILE INSURANCE POLICY

ARKANSAS

### TO OUR CUSTOMERS – PLEASE NOTE

Please read this policy carefully. If you have questions, contact your Shelter Agent for answers. No agent can know your exact coverage needs or budget, so you must read the policy form, Declarations, and endorsements and make sure it provides the types of coverage you need in the amounts you requested.

If you are involved in an accident, please read this policy again so that you will be reminded of your rights and obligations. **It is very important for you to recognize that this insurance policy is a legally binding contract. If any insured fails to perform an obligation required by this policy, the coverage which it might otherwise provide could be lost.**

For information regarding the policy, please contact your Shelter Insurance® Agent.



**SHELTER INSURANCE COMPANIES**
Home Office: Columbia, MO 65218-0001
Exhibit D

A-19.4-A

THE INDEX
WHERE YOU CAN FIND IT

The **Declarations** shows the **named insured**, additional listed insureds, insured vehicle, policy period, types of coverage, and amount of insurance **you** have.

Beginning on Page

DEFINITIONS .................................................................................................................................. 2

GENERAL AGREEMENTS ON WHICH INSURING AGREEMENTS ARE BASED ........................ 5
    Applications ......................................................................................................................... 5
    **Your** Duty to Make Sure **Your** Coverages Are Correct ................................................. 5
    Premium Payments ............................................................................................................. 6
    Premium Changes During Policy Period ........................................................................... 6

POLICY TERMS APPLICABLE TO MORE THAN ONE PART OF THE POLICY ....................... 6
    Titles of Paragraphs .......................................................................................................... 6
    Entire Agreement ............................................................................................................... 6
    Owners' Policy as Defined by Applicable **Financial Responsibility Laws** .................... 6
    Trusts, Trustees, and Trustors (Settlors) .......................................................................... 6
    Effect of Endorsements ...................................................................................................... 6
    Amended and Additional Definitions Used in Various Policy Sections .............................. 6
    Policy Period and Territories ............................................................................................. 6
    Fraud ................................................................................................................................. 6
    Liberalization ..................................................................................................................... 6
    Insurance with Other Companies ...................................................................................... 6
    Other Insurance with Shelter Mutual Insurance Company or Shelter General Insurance Company ........ 6
    Legal Action against **Us** .................................................................................................. 7
    Subrogation ........................................................................................................................ 7
    Assignment of **Your** Policy Rights ................................................................................... 7
    Death of All **Named Insureds** ......................................................................................... 7
    Cancellation and Modification ........................................................................................... 7
    Refusal to Renew ............................................................................................................... 8
    Thirty-Day Temporary Insurance on Replacement **Autos** ............................................... 8
    Thirty-Day Temporary Insurance on Additional **Autos** ................................................... 8
    Conformity to Arkansas Law ............................................................................................. 8
    Changes to This Policy and Waiver of its Provisions ......................................................... 8
    Notice of an **Accident** ..................................................................................................... 8
    Cooperation of All **Insureds** ........................................................................................... 8
    General Duties of All **Insureds** in the Event of a **Claim** ............................................... 8

PART I – **AUTO** LIABILITY - COVERAGE A AND COVERAGE B .............................................. 9

PART II – COVERAGE C - **AUTO** MEDICAL AND HOSPITAL BENEFITS ............................... 11

PART III – COVERAGE D - **AUTO** ACCIDENTAL DEATH BENEFIT ...................................... 12

PART IV – COVERAGE E - **UNINSURED MOTOR VEHICLE** LIABILITY COVERAGE ............ 13

PART V – **AUTO** PHYSICAL DAMAGE - COVERAGES F, G, AND J ......................................... 15

INCOME DISABILITY BENEFITS ENDORSEMENT – A-928.7-A ............................................... 18

AUTOMOBILE INSURANCE POLICY

DEFINITIONS

In this policy, the words shown in bold type have the meanings stated below unless a different meaning is stated in a particular coverage or endorsement. Words in bold type that are derived from a defined word have the same root meaning. The plural version of a defined word has the same meaning as the singular if it is also bolded. If any of these same words are used but not printed in bold type, they have their common dictionary meaning.

(1) **Accident** means an **occurrence** that was neither expected nor intended. The following types of **occurrences** are excluded from the definition of **accident**:

    (a) Any **occurrence** that an **insured** intended to result in **bodily injury** or **property damage**; and

    (b) Any **occurrence** that was intended by an **insured**, if a reasonable **individual** would have expected it to result in **bodily injury** or **property damage**.

(2) **Auto** means a **motor vehicle** with at least four wheels.

(3) **Auto business** means the selling, renting, leasing, repairing, servicing, storing, or parking, of **motor vehicles**, if the **person** engaged in that conduct receives any form of compensation for it.

(4) **Bodily injury** means:

    (a) A physical injury;

    (b) A sickness or disease of the body;

    (c) The physical pain and physical suffering that directly results from (a) or (b), above; or

    (d) A death that directly results from (a) or (b), above.

The following medical conditions are excluded from the definition of **bodily injury**:

    (a) Mental injuries;

    (b) Sicknesses or diseases of the mind;

    (c) Mental anguish; and

    (d) Emotional distress;

unless such mental or emotional condition is diagnosed by a medical doctor or licensed psychologist and directly results from **bodily injury** to the **individual** on whose behalf the **claim** is made.

(5) **Claim** means a request by any **person** for benefits under a coverage provided by this policy as a result of a single accident. It includes lawsuits, requests for the payment of money, requests that **we** take any action, or extend the benefits of any coverage provided by this policy.

(6) **Comparable value** means the depreciated worth of the covered **auto** or part immediately before the **accident**; plus the **reasonable charges** required to pay for any of the following that apply to the **claim**:

    (a) Incurred cost for the necessary towing of the covered **auto** from the place where the **accident** occurred;

    (b) Incurred cost for necessary storage of the covered **auto** from the day **you** make a **claim** under this policy until **we** offer to settle that **claim**;

    (c) Sales tax or luxury vehicle tax **you** must incur to acquire **ownership** of another **auto** or part to replace the covered **auto** or part with one of equal value; and

    (d) Other taxes or fees **you** must incur to acquire **ownership** of another **auto** or part to replace the covered **auto** or part with one of equal value.

**Comparable value** is determined by **us**. **We** base that determination on **our** knowledge of the prices charged by vehicle or part merchants in the geographic area where the **insured resides**. To aid **us** in determining **comparable value**, **we** may use any one or more of the databases, appraisal tools, and other methods the insurance industry commonly uses to evaluate similar vehicles or parts.

(7) **Compensation law** means any law under which benefits are paid, without regard to fault, as compensation for the effects of **bodily injury**, because of the recipient's status as an employee or beneficiary of an employee. It includes, but is not limited to, workers' compensation laws, disability laws, the Federal Employers' Liability Act, and the Jones Act.

(8) **Consequential loss** means a monetary loss that results from **property damage** other than the cost of repairing or replacing the property itself. **Consequential loss** includes:

    (a) The diminished value of property subsequent to its repair or the replacement of one or more of its parts;

    (b) The diminished value of the property resulting from the use of a **replacement part** that has a different warranty than the damaged part; and

    (c) Monetary loss resulting from the loss of the use of the damaged property during the time between the **accident** and its return to service.

(9) **Cost to repair** means the **reasonable charges** for the **repair** of the covered **auto** or part, plus the **reasonable charges** required to pay for any of the following that apply to the **claim**:

    (a) Incurred cost for the necessary towing of the covered **auto** from the place where the **accident** occurred;

    (b) Incurred cost for necessary storage of the covered **auto** from the day **you** make a **claim** under this policy until **we** offer to settle that **claim**.

**Cost to repair** is determined by **us**. **We** base that determination on **our** knowledge of the prices charged by repair facilities in the geographic area where the **repair** is to be done. To aid **us** in determining **cost to repair**, **we** may use any one or more of the databases, appraisal tools, and other methods the insurance industry commonly uses to determine those charges.

(10) **Declarations** means the part of this policy titled "Auto Policy Declarations and Policy Schedule". It sets out many of the individual facts related to **your** policy including the dates, types, and dollar limit of the various coverages.

(11) **Deductible** means an amount of money deducted from the total amount paid for covered **claims** based on damage to property. The specific dollar amount of the **deductible** applicable to each payment is shown in the **Declarations**.

(12) **Described auto** means the vehicle described in the **Declarations**, but only if a **named insured owns** that vehicle. It includes:

    (a) All parts, and equipment, **permanently attached** to that vehicle before its **original sale**;

    (b) All wireless components of its **permanently attached** equipment if:

        (i) Both the **permanently attached** component and the wireless component were purchased, with the vehicle, at its **original sale**; and

        (ii) The **permanently attached** component is essential to the functioning of the wireless component;

    (c) Replacements for the parts and equipment listed in (a) and (b), above, installed to **repair**, or refurbish, the vehicle, if

A-19.4-A

Exhibit D
2

the replacement items are equivalent in value; and

(d) A **temporary substitute auto**.

(13) **Direct loss** means:

(a) The **comparable value**; or

(b) The **cost to repair**.

**Direct loss** does not include **consequential loss**.

(14) **Domestic employee** means an employee paid to work at **your** household; or a private chauffeur who is employed by **you**. This definition does not apply to any employee if:

(a) Benefits are payable to, or on behalf of, such employee under any **compensation law** as a result of the same **accident**; or

(b) Benefits are required to be provided to, or on behalf of, such employee by any **compensation law** as a result of the same **accident**.

(15) **Financial responsibility law** means a law that requires a certain level of financial responsibility, or certain level of insurance coverage, in order to **own**, **use**, or allow others to **use** a **motor vehicle** in the state or country in which coverage under this policy is sought. It includes motor vehicle financial responsibility laws, compulsory insurance laws, and all other laws with similar purposes.

(16) **General consent** means the authorization of the **owner** of an **auto** for another to **use** it on one or more occasions without the necessity of obtaining **permission** for each **use**. **General consent** can be expressed or implied.

(17) **Health care provider** means a licensed provider of medical, chiropractic, psychological, hospital, nursing, dental, surgical, ambulance, or prosthetic, services.

(18) **Hit-and-run motor vehicle** means a **motor vehicle**:

(a) That came into actual physical contact with an **insured** or a vehicle **occupied** by an **insured**; and

(b) Whose **owner** or **operator** cannot be identified because its **operator** left the scene of the **accident** with that **motor vehicle**.

(19) **Individual** means a human being.

(20) **Lease** means a right to possess and use real property or **personal property** for a period of 30 or more consecutive days based upon a written agreement with the **owner** of that property.

(21) **Maintenance** means the performance of services necessary to keep a **motor vehicle** in working order, or to restore it to working order. It does not include installing or servicing equipment that is not usual and incidental to the **use** of a **motor vehicle**.

(22) **Motor vehicle** means a self-propelled land vehicle originally designed for **operation** on **public roadways**. The following types of vehicles are excluded from the definition of **motor vehicle**:

(a) Farm-type tractors, except while being **used** on a **public roadway**;

(b) Vehicles altered for **use** in competition with other vehicles if the alteration prevents them from being licensed for **use** on a **public roadway**; and

(c) Vehicles being utilized as a dwelling, display area, sales area, or storage area.

(23) **Named insured** means any **person** listed in the **Declarations** under the heading "Named Insured". **Persons** listed under other headings are not **named insureds** unless they are also listed under the heading "Named Insured".

(24) **Necessary goods and services** means goods and services that

are furnished or prescribed by a **health care provider** if, in **our** judgment, they are necessary for the proper treatment of **bodily injury** in the most efficient and economical fashion that it can be safely treated. **We** may employ outside reviewers, consultants, or data providers, to determine if the goods and services are **necessary goods and services**. That determination may be made after the **insured** has received the goods or services; and the fact that a **health care provider** furnished, rendered, or prescribed, the goods and services is not solely determinative of whether they are **necessary goods and services**.

(25) **Non-owned auto** means any **auto** being **used**, maintained, or **occupied** with **permission**, other than:

(a) The **auto** listed in the **Declarations**;

(b) An **auto** owned by any **insured**, **spouse**, or a **resident** of any **insured's** household; or

(c) An **auto** that any **insured**, **spouse**, or a **resident** of any **insured's** household has **general consent** to **use**.

A **rental auto** is a **non-owned auto** if it is not an **auto** described by (a), (b), or (c) above, is not a **temporary substitute auto**, and otherwise meets the definition of **rental auto**.

(26) **Occupy** means being in physical contact with a vehicle while:

(a) In it;

(b) Getting into it; or

(c) Getting out of it.

An **individual** who is not in physical contact with a vehicle is not **occupying** it.

(27) **Occurrence** means an action or event, or a series of actions or events, that:

(a) Started abruptly;

(b) During the policy period;

(c) Directly resulted in **bodily injury** or **property damage**; and

(d) May result in a **claim**.

(28) **Operator** means an **individual** who is **using** a vehicle.

(29) **Original sale** means the first sale of the **described auto** by a dealer to the original consumer. It does not mean its sale by the manufacturer to a dealer, nor does it necessarily mean its sale to the **insured**.

(30) **Own** means the **person** referred to holds the legally recognized title to, or is a **leaseholder** of, an item of real or personal property, even if there are other **owners**. This definition is not changed by the patterns of usage of the property. With respect to vehicles only, it means the **person** in possession of the vehicle, if that **person**:

(a) Has the right to purchase it upon performance of conditions stated in a conditional sale agreement;

(b) Is a lender entitled to possession of it based on the terms of a loan secured by that vehicle; or

(c) Is a **lessor** entitled to possession of it based on a **lease** agreement for that vehicle.

(31) **Passenger** means an **individual** who is **occupying** one of the seats of a vehicle with **permission** but does not include the **operator** of a vehicle.

(32) **Permanently attached** means attached to the vehicle by welds, screws, rivets, or bolts. Parts attached by wires or other fastening devices are not **permanently attached**.

(33) **Permission** means the consent of the vehicle **owner**. **Permission** can be expressed or implied. An **individual** who was authorized to **use** a vehicle by a **person** in possession of it

will be treated as having **permission** to **use** it, if he or she reasonably believes that its **owner** consented to that **use**.

(34) **Person** means an **individual**, a corporation, or an entity that has separate legal existence under the laws of the state where this policy was issued or a **claim** is made.

(35) **Post-judgment interest** means interest, payable under the laws of a state in which a covered judgment is rendered, that accumulates after a judgment. It does not include pre-judgment interest calculated on any time period preceding the date on which the judgment is entered.

(36) **Property damage** means a demonstrable physical damage to real or personal property. It includes the stealing of personal property. It does not include any amount payable by any **insured** as a result of an agreement of any kind, including a rental agreement.

(37) **Public roadway** means a roadway maintained by a governmental entity or agency. The fact that the general public has access to a roadway does not itself make that roadway a **public roadway**.

(38) **Punitive damages** means a monetary award imposed to punish a wrongdoer and to deter others from similar conduct. It includes all monetary awards based on any legal theory that requires proof of the same standard of conduct necessary to support an award of **punitive damages** under the law of the state where they are awarded.

(39) **Reasonable charges** means the lesser of:
   (a) The amount for which **we** can discharge the **insured's** entire obligation to the **person** providing the goods and services; or
   (b) The charges incurred for goods and services that, in **our** judgment, are within the range of charges for the same or similar goods and services, in the geographic area where the services are rendered or the goods are purchased.

**We** may employ outside reviewers, consultants, or data providers to determine if the charges are **reasonable charges**. That determination may be made after the **insured** has received the goods or services for which the charges are made and the fact that a **health care provider** or licensed funeral provider furnished, rendered, or prescribed the goods and services is not solely determinative of whether the charges made for them are **reasonable charges**.

The following types of charges are excluded from the definition of **reasonable charges**:
   (1) Charges for treatment, services, products, or procedures that are:
      (a) Experimental in nature;
      (b) Done for research purposes;
      (c) Not primarily designed to serve a medical purpose; or
      (d) Not commonly recognized throughout the medical profession in the United States as appropriate for the treatment of the **bodily injury** that is the subject of a **claim** under Coverage C.
   (2) Charges for:
      (a) Thermography or procedures of a similar nature;
      (b) Acupuncture or procedures of a similar nature; or
      (c) The purchase or rental of equipment that is not primarily designed to serve a medical purpose.

(40) **Relative** means an **individual** related to **you** by blood, marriage, or adoption, who is a **resident** of **your** household. It

includes **your** child who is away at school, if that child is both unmarried and unemancipated. **Relative** also includes any foster child in **your** legal custody for more than 90 consecutive days immediately before the **accident**. An **individual** who **owns** a **motor vehicle**, or whose husband or wife **owns** a **motor vehicle**, is excluded from the definition of **relative**.

(41) **Rental auto** means an **auto** furnished:
   (a) For money;
   (b) To **you** or a **relative**;
   (c) By a commercial **auto** rental business;
   (d) Under the terms of a written agreement; and
   (e) For a period of less than 30 consecutive days.

(42) **Repair** means the restoration of form and function by restoring existing parts or by using **replacement parts** if needed. **Repair** does not mean the restoration of pre-damage value; nor does it include compensation for the diminution of value resulting from the fact that an item has been **repaired**.

(43) **Replacement part** means a new or previously used part made by any manufacturer, irrespective of whether that manufacturer made the original part or vehicle.

(44) **Reside** means to actually live in a location with the intent to make that place, and no other, one's primary, and permanent, home. If the parents of a minor child do not **reside** with one another, **we** will consider the child a **resident** of both their households if that child regularly spends time in each of their **residences**.

(45) **Spouse** means the lawful husband or wife of any **individual** defined as an **insured** under the applicable part of this policy, if he or she is a **resident** of the same household as that **insured**.

(46) **Struck by** means there was actual, direct, physical contact. An **individual** who was **occupying** a vehicle when it was **struck by** another vehicle was not **struck by** that vehicle, unless he or she also came into actual, direct, physical contact with it.

(47) **Temporary substitute auto** means an **auto** that is not **owned** by any **insured**, **spouse**, or a **resident** of any **insured's** household, while it is being **used** with **permission** as a substitute for the **described auto**. This definition applies only during that period of time in which the **described auto** is withdrawn from **use** because of its breakdown, **maintenance**, theft, or destruction. The following time limitations apply to this definition:
   (a) If the **auto** is being **used** because of the breakdown of the **described auto**, it is a **temporary substitute auto** for only the period of time necessary to deliver the **described auto** to the **person** who will perform the **repairs** necessary to return it to service; and in no event for more than five days after the breakdown of the **described auto**;
   (b) If the **auto** is being **used** because of the **repair** or **maintenance** of the **described auto**, it is a **temporary substitute auto** only for the reasonable period of time the **described auto** is in the possession of the **person** performing the necessary **repairs** or **maintenance**;
   (c) If the **auto** is being **used** because of the theft of the **described auto**, it is a **temporary substitute auto** only for the period of time reasonably necessary to replace the **described auto**, and in no event for more than 30 days after the **described auto** was stolen; and
   (d) If the **auto** is being **used** because of the destruction of the **described auto**, it is a **temporary substitute auto** only for the period of time reasonably necessary to replace the

**described auto**, and in no event for more than 30 days after the **described auto** was destroyed.

(48) **Trailer** means a vehicle designed to:
- (a) Be pulled on **public roadways**; and
- (b) Transport people or property.

**Trailer** does not include equipment designed for other purposes that happens to be pulled behind a towing unit.

(49) **Uncompensated damages** means the part of the **damages** that exceeds the sum of:
- (a) The total amount paid to the **insured** by any **persons** obligated to pay those **damages**; plus
- (b) The total amount paid, or payable, to the **insured** by the liability insurers of any **persons** obligated to pay those **damages**.

(50) **Underinsured motorist insurance law** means any law that applies to a **claim** made under the **underinsured motor vehicle** coverage of this policy; or governs the terms of that coverage.

(51) **Underinsured motor vehicle** means a **motor vehicle** covered by a liability bond  or insurance policy, applicable to the **accident**; but the monetary limits of that bond or policy, applicable to the **accident**, are less than the full amount owed by its **owner** or **operator** for the **insured's damages**. The following vehicles and types of vehicles are excluded from the definition of **underinsured motor vehicle**:
- (a) The **described auto**;
- (b) **Motor vehicles owned** by any **insured**, or a **resident** of any **insured's** household; or
- (c) **Motor vehicles** that any **insured**, or any **resident** of an **insured's** household has **general consent** to **use**.

(52) **Uninsured motorist insurance law** means any law that applies to a **claim** made under Coverage E or governs the terms of that coverage.

(53) **Uninsured motor vehicle** means:
- (a) A **motor vehicle** that is:
  - (i) Not covered by a liability bond or insurance policy applicable to the **accident**; and
  - (ii) **Used** by an **individual** who is not covered by a liability bond or insurance policy applicable to the **accident**;
- (b) A **hit-and-run motor vehicle**; or
- (c) A **motor vehicle** insured by a liability insurer that, because of its insolvency, is unable to make payment with respect to the legal liability of its insured up to the minimum limits of liability insurance coverage specified in the applicable **financial responsibility law**. This subsection applies only if that liability insurer becomes insolvent within two years after the **accident**.

The following vehicles and types of vehicles are excluded from the definition of **uninsured motor vehicle**:
- (a) The **described auto**;
- (b) **Motor vehicles owned** or **used** by a self-insurer within the meaning of any applicable **financial responsibility law**;
- (c) **Motor vehicles owned** by any **insured**, or a **resident** of any **insured's** household;
- (d) **Motor vehicles** being **used** by any **person** who is an employee of the United States Government while acting within the scope of that employment;
- (e) **Motor vehicles** being **used** by any **person** who the Federal Tort Claims Act requires the Attorney General of

the United States to defend  if a lawsuit is brought because of **bodily injury** that resulted from such **usage**; or
- (f) **Motor vehicles owned** by any governmental unit or governmental agency.

(54) **Use** means physically controlling, or attempting to physically control, the movements of a vehicle.  It includes any emergency repairs performed in the course of a trip, if those repairs are necessary to the continued **use** of the vehicle.

(55) **Utility trailer** means a **trailer** designed to be towed by an **auto** with a gross vehicle weight rating (GVWR) of 12,000 pounds or less. This definition applies only during that period of time the **trailer** is:
- (a) Actually attached to the **described auto** or a **non-owned auto**; or
- (b) Still moving, after becoming unattached from such **auto**, while that **auto** is in motion.

A **trailer** being used in any of the following ways is excluded from the definition of **utility trailer**:
- (a) Without **permission** or **general consent**;
- (b) As an office, store, display, or living quarters; or
- (c) To transport one or more **individuals**.

(56) **War** means armed conflict whether or not officially declared. It includes civil war, insurrection, rebellion, revolution, or any act or condition incident to any of those events.

(57) **We**, **us**, and **our**, mean the Shelter company providing this insurance.

(58) **You** means any **person** listed as a **named insured** in the **Declarations** and, if that **person** is an **individual**, his or her **spouse**.

## GENERAL AGREEMENTS ON WHICH INSURING AGREEMENTS ARE BASED

APPLICATIONS

If **you** accept this policy, **you** agree that the statements in the original application and any applications for change accepted by **us**, were offered to induce **us** to issue, continue, or renew, this policy, and are **your** representations, regardless of who filled in or supplied the information on those forms.

**We** agree to insure **you** according to the terms and conditions of this policy, but **we** do so relying on the truth and accuracy of the statements made in the first application and in any applications for change. If any of those statements are false, **we** will not provide coverage under this policy.

**YOUR** DUTY TO MAKE SURE **YOUR** COVERAGES ARE CORRECT

**You** agree to check the **Declarations** each time **you** receive one, to make sure that:
(1) All the coverages **you** requested are included in this policy; and
(2) The limit of **our** liability for each of those coverages is the amount **you** requested.

**You** agree to notify **us** within ten days of the date **you** receive any **Declarations** if **you** believe the coverages, or amounts of coverage, it shows are different from those **you** requested. If **you** do not notify **us** of a discrepancy, **we** will presume the policy meets **your** requirements.

PREMIUM PAYMENTS

**We** agree to insure **you** based on **your** promise to pay all premiums when due. If **you** pay the premium when due, this policy provides the insurance coverages in the amounts shown in the **Declarations**. If, for any reason, **your** premium payment is not honored by **your** bank, no insurance is provided for any of the policy period covered by that payment.

PREMIUM CHANGES DURING POLICY PERIOD

The premium charged for this policy is based in large part on information **you** provided to **us**. If that information is incomplete or inaccurate, or if it changes during the policy period, **you** must inform **us**, if it relates to:

(1)   The **described auto**;
(2)   The **individuals** who regularly **use** the **described auto**;
(3)   Any changes in the number of licensed drivers in **your** household;
(4)   **Your** marital status;
(5)   **Your residence** address; or
(6)   The primary location of the **described auto**.

If there is a change in the facts relating to any of the above listed items, or if **you** correct inaccurate or incomplete information related to them, **we** may increase or decrease the premium during the policy period based on such changed or supplemented information.

POLICY TERMS APPLICABLE TO
MORE THAN ONE PART OF THE POLICY

TITLES OF PARAGRAPHS

The titles of the various paragraphs of this policy and of any endorsements to it are inserted solely for ease of reference and do not in any way change the legal effect of the provision to which they relate.

ENTIRE AGREEMENT

This policy includes the policy form, the application related to it, any requests for changes to it, all endorsements, and the **Declarations**. Those documents include all the agreements between **you** and **us** or any of **our** agents relating to this insurance.

OWNERS' POLICY AS DEFINED BY APPLICABLE
**FINANCIAL RESPONSIBILITY LAWS**

The provisions of this policy that are subject to the **financial responsibility laws** of the state of Arkansas will comply with those laws in all respects. Conflicting policy language is superseded by the requirements of those laws.  This policy is an "owners' policy" as that term is used in the **financial responsibility law** of the state of Arkansas unless it is specifically endorsed as an "operator's policy" in which case it will function as such in the manner required by the same laws.

TRUSTS, TRUSTEES, AND TRUSTORS (SETTLORS)

If a trust or a trustee is a **named insured**, coverage is not provided under any part of this policy for the trustor (settlor) of the trust unless:

(1)   That trustor is specifically included, by name, as an **insured**; or
(2)   Becomes an **insured** by operation of a policy definition related to the coverage under which a **claim** is made.

EFFECT OF ENDORSEMENTS

Endorsements to this policy are a part of it and have the same contractual effect as the provisions of the base policy itself. If the terms of an endorsement conflict with the terms of the base policy with respect to a specific **claim**, the terms of the endorsement will apply to that **claim**.

AMENDED AND ADDITIONAL DEFINITIONS USED IN VARIOUS POLICY SECTIONS

Some coverage parts and endorsements contain definitions that differ from those defining the same words in other coverages. With respect to the handling of a specific **claim**, the definition provided in the coverage being considered controls when it differs from a definition of the same word provided in another coverage.

POLICY PERIOD AND TERRITORIES

(1)   This policy and any endorsements to it apply only to **accidents** that take place:
    (a)   In the United States of America, its territories, and its possessions;
    (b)   In Canada; or
    (c)   While the **insured** or a covered vehicle is being transported between their ports.
(2)   This policy and any endorsements to it cover only those **persons** who were **insureds** on the date of the **accident**.

FRAUD

**We** do not provide coverage under any part of this policy for an **insured** who has made fraudulent statements, or engaged in fraudulent conduct, in connection with any **claim**, or **accident** for which coverage is sought under this policy.

LIBERALIZATION

A number showing the particular policy form constituting a part of this policy is printed at the bottom of this page and another number is shown on each endorsement to this policy.  If **we** change a particular policy form such that the insurance it provides is broadened without extra premium, this policy will be applied as if that broadened coverage is included as of the date **we** make the change effective. But broader coverage contained in a form with a different number is not subject to this provision.

INSURANCE WITH OTHER COMPANIES

If this policy applies to a **claim** and insurance provided by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company also applies, the section of the specific coverage headed "INSURANCE WITH OTHER COMPANIES" determines how the coverage under this policy interacts with the other coverage.

OTHER INSURANCE WITH SHELTER MUTUAL INSURANCE COMPANY OR SHELTER GENERAL INSURANCE COMPANY

If more than one policy issued by Shelter Mutual Insurance Company or Shelter General Insurance Company provides coverage for a single loss, this policy covers only the proportion of the total amount payable that its limits bear to the total limits of all such policies. The total maximum amount payable under all such policies is the highest limit of any one coverage applicable to the loss.  This limitation does not apply to:

(1)   Coverage A, or Coverage B, if more than one **insured** is entitled to coverage; and

(2)   Coverage D.

LEGAL ACTION AGAINST **US**
Any legal action against **us** seeking coverage or payments must be brought in the state of Arkansas.

In any legal action against **us**, this policy and its binder are to be interpreted according to the laws of the state of Arkansas.

No one will have any right under this policy to join **us** as a party to any legal action filed against an **insured** to determine such **insured's** liability. An **insured** or an **insured's** legal representative may not include **us** in such action.

SUBROGATION
If **we** pay any **person** under this policy, **we** will be subrogated to that **person's** rights of recovery, based on the same **damages**, against any **person** liable for the **damages** on which **our** payment was based.

Any **person** who receives payment under this policy, agrees to sign and deliver legal instruments to **us** and do whatever else necessary to secure **our** rights.

Any **person** who receives payment under this policy, agrees to cooperate with **us** in enforcing **our** subrogation rights and to do nothing to prejudice **our** rights.  If an **insured** has a right of recovery against any **person** for **damages** payable under a provision of this policy, but fails to file a lawsuit to enforce that right in the time allowed by the applicable statute of limitations, that **insured's** right to recover for the same **damages** under this policy are excluded.

**We** will not enforce **our** rights under this provision until the **insured** who received **our** payment is fully compensated for his, her, or its, loss.

ASSIGNMENT OF **YOUR** POLICY RIGHTS
**You** may not assign any of **your** rights under this policy, except those provided in Coverage C, unless **we** consent in writing.

DEATH OF ALL **NAMED INSUREDS**
For the period of time this policy remains in force after the death of the last surviving **named insured**, it will cover any **individual** who was his or her **spouse** on the date of death. Coverage will be provided only for the balance of the current policy period.

In addition, the following **persons** will be treated as having **permission** to **use** the **described auto**:
(1)   The **named insured's** legal representative, but only while acting within the scope of that **person's** duties as such; and
(2)   Any **person** who, at the time of the last **named insured's** death, had possession of the **described auto** with **permission**. **We** will cover that **person** until a legal representative for the **named insured** is appointed, up to a maximum of 90 days from the date of the **named insured's** death.

No **person** insured because of this policy section will have the right to renew this policy beyond the last date on which it provides coverage. All coverage ends if this policy lapses.

CANCELLATION AND MODIFICATION
Any **named insured** may cancel this policy or ask **us** to modify it by telling **us** what modifications are requested or when the cancellation is to be effective. It is not necessary for all **named insureds** to request, or confirm, cancellation or modification. When there are two or more **named insureds**, each one of them acts for all of them when canceling or requesting modifications to this policy.

**We** are not obligated to send anyone notice of such cancellation or modification unless a relevant provision of this policy specifically requires it.

**We** may cancel this policy at any time during the policy period for failure to pay any premium due **us**. **We** may do so irrespective of whether such premium is payable directly to **us** or to **our** agent. If **we** cancel this policy under this provision, **we** will do so by mailing written notice to the **named insured** at the address last known to **us**. That notice will state when the cancellation will be effective, but it will not be less than 10 days after **we** mail the notice.  Proof of mailing a notice is proof of notice.

If this policy has been in effect for less than 60 days, **we** may cancel it for any reason not prohibited by law. If **we** cancel this policy under this provision, **we** will do so by mailing written notice to the **named insured** at the address last known to **us**. That notice will state when the cancellation will be effective, but it will not be less than 20 days after **we** mail the notice. Proof of mailing a notice is proof of notice.

If this policy has been in effect for 60 days, or if it is a renewal, **we** may cancel it for one or more of the following reasons:
(1)   If **you**, or anyone listed as a driver of the **described auto**, are convicted of:
   (a)   Driving while intoxicated;
   (b)   Homicide or assault arising out of **use** of a **motor vehicle**; or
   (c)   Three separate convictions of speeding or reckless driving, or any combination of the two, during the policy period and the three months immediately prior to the effective date of the policy;
(2)   If the driver's license or motor vehicle registration of:
   (a)   **You**; or
   (b)   Any other **individual** listed as a driver of the **described auto** who either lives in **your** household or customarily **operates** the **described auto**;
is suspended or revoked. The suspension or revocation must have taken place during the policy period or, if this policy is a renewal, during the renewal policy period or the 180 days immediately preceding its renewal date;
(3)   **We** learn that this policy was procured by means of fraud or misrepresentation of a material fact, and the knowledge of the true fact would have caused **us** to decline to issue a policy.

If **we** cancel this policy under this provision, **we** will do so by mailing written notice to the **named insured** at the address last known to **us**. That notice will state when the cancellation will be effective, but it will not be less than 20 days after **we** mail the notice. Proof of mailing a notice is proof of notice.

Upon cancellation, the **named insured** may be entitled to a premium refund, but payment or tender of a premium refund is not a condition of cancellation.  Any refund will be pro rata. The **named insured**

A-19.4-A

may choose to credit the premium refund toward another policy issued by **us**.

REFUSAL TO RENEW
**We** may refuse to renew this policy for any reason not prohibited by law. If **we** refuse to renew this policy for a reason other than non-payment of premium, **we** will mail notice to the **named insured** at the address last known to **us** at least 30 days before the policy period ends.  Proof of mailing a notice is proof of notice.

This policy will automatically terminate at the end of the policy period if **you** or **your** representative does not accept **our** offer to continue or renew it.  **Your** failure to pay the required continuation or renewal premium means that **you** have declined **our** offer.

THIRTY-DAY TEMPORARY INSURANCE ON REPLACEMENT **AUTOS**
The temporary insurance provided under this section does not apply to any **claim** that is covered by any other policy of insurance regardless of the types of coverage provided by that policy.

The insurance provided by this policy with respect to the **described auto** applies to any other **auto** in which **you** acquire **ownership**, if it replaces the **described auto** and **you** no longer **own** the **described auto**. The insurance on this replacement **auto** includes only those coverages that applied to the **described auto**. This coverage expires at the earlier of:
(1)    12:01 A.M. on the thirty-first day after **you** acquire **ownership** of the **auto**; or
(2)    The date this policy lapses.

To obtain this temporary coverage, **you** must notify **us**, while this policy is in force, and within 30 days after the date **you** acquire **ownership** of the replacement **auto**, that **you** want this policy to apply to it.

If this policy applies to a replacement **auto** but does not provide Coverage F or Coverage G for the **described auto**, it will provide that coverage for the replacement **auto** from the date it is delivered to **you** until 12:01 A.M. on the sixth day after delivery. A $500 **deductible** applies. This coverage ends if the policy lapses.

THIRTY-DAY TEMPORARY INSURANCE ON ADDITIONAL **AUTOS**
The temporary insurance provided under this section does not apply to any **claim** covered by any other policy of insurance regardless of the types of coverage provided by that policy.

The insurance provided by this policy with respect to the **described auto** applies to any other **auto** with a gross vehicle weight rating (GVWR) of 12,000 pounds or less in which **you** acquire **ownership**, if it is an additional **auto** and all **autos**, **owned** by **you** and licensed for **use** on a **public roadway** on the date of such acquisition, are either:
(1)    Insured by Shelter Mutual Insurance Company or Shelter General Insurance Company; or
(2)    Are a type that is not eligible for insurance with either of those Companies under their underwriting guidelines.

The insurance on this additional **auto** includes only those coverages that applied to the **described auto**. This coverage expires at 12:01

A.M. on the thirty-first day after **you** acquire **ownership** of the additional **auto**.

To obtain this temporary coverage, **you** must notify **us**, while this policy is in force, and within 30 days after the date **you** acquire **ownership** of the additional **auto**, that **you** want this policy to apply to it.

If **you** want coverage from **us** on the additional **auto** past the 30-day period, **you** must submit a new application.

If this policy does not provide Coverage F or Coverage G for the **described auto**, it will provide that coverage for the additional **auto** from the date it is delivered to **you** until 12:01 A.M. on the sixth day after delivery. A $500 **deductible** applies.

CONFORMITY TO ARKANSAS LAW
If any of the terms of this policy are in conflict with the law of the state of Arkansas, those conflicting terms are amended to conform to such law.

CHANGES TO THIS POLICY AND WAIVER OF ITS PROVISIONS
The provisions of this policy may be changed or waived only by written agreement signed by **us**. No **person** should consider any other action to indicate **our** waiver of any policy provision.

NOTICE OF AN **ACCIDENT**
After an **accident**, any **person** who is an **insured** under this policy must notify **us** promptly. That notice must accurately inform **us** of the time, place, and circumstances of the **accident**, including the names and addresses of witnesses and all **persons** who suffered any **property damage** or injury.

COOPERATION OF ALL **INSUREDS**
All **insureds** must cooperate with **us** in the investigation, settlement, and defense, of any **claim**.  If an **insured** fails to cooperate with **us** when requested to do so, this policy will provide that **insured** with no coverage for any **claim** arising out of the same **accident**.

GENERAL DUTIES OF ALL **INSUREDS** IN THE EVENT OF A **CLAIM**
Any **person** who makes a **claim** for any coverage under this policy, must promptly:
(1)    Send **us** all correspondence and all legal papers that relate to any **claim**;
(2)    Authorize **us** to obtain any other records that may be relevant to the **claim** or that may reasonably be expected to aid **us** in determining the facts relevant to the **claim**;
(3)    Provide any written proofs of loss **we** require;
(4)    Answer any questions **we** ask, under oath, and outside the presence of any other **individual** unless that **individual** is a licensed attorney; or, if the **individual** being questioned is a minor, his or her parent; and
(5)    Sign a written transcript of the questions posed and answers given.
If such **claim** is based on **bodily injury**, the **person** making such **claim** must also:
(1)    Submit to physical examinations, as often as **we** may reasonably require, by doctors **we** select and pay; and
(2)    Authorize **us** to obtain relevant medical records.

## PART I - **AUTO** LIABILITY COVERAGES
### COVERAGE A - **BODILY INJURY** LIABILITY COVERAGE
### COVERAGE B - **PROPERTY DAMAGE** LIABILITY COVERAGE

The following coverages are provided under this policy only if they are shown in the **Declarations** and are subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

INSURING AGREEMENT FOR COVERAGE A AND COVERAGE B
Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, **we** will pay **damages** on behalf of an **insured**.

ADDITIONAL DEFINITIONS USED IN COVERAGE A AND COVERAGE B
In Coverage A and Coverage B:
(1) **Damages** means money, including pre-judgment interest, an **insured** is legally obligated to pay to another **person** because of **bodily injury**, **property damage**, or **consequential loss**, arising out an **accident** caused by that **insured's ownership**, **maintenance**, or **use**, of the **described auto** or a **non-owned auto**. The following items are excluded from the definition of **damages**:
 (a) **Punitive damages**; and
 (b) Any amount payable under the terms of a contract.
(2) **Insured** means a **person** included in one of the following categories, but only to the extent stated in that category.
 CATEGORY 1
 **You** are an **insured** for **claims** resulting from **your ownership**, **maintenance**, or **use** of the **described auto**; and **your use** of **non-owned autos**.
 CATEGORY 2
 (a) **Relatives**; and
 (b) **Individuals** listed in the **Declarations** as an "additional listed insured" who do not **own** a **motor vehicle**, and whose **spouse** does not **own** a **motor vehicle**;
 are **insureds** for **claims** resulting from their **use** of the **described auto** and **non-owned autos**.
 CATEGORY 3
 **Individuals** who have **permission** or **general consent** to **use** the **described auto** are **insureds** for **claims** resulting from that **use**.

ADDITIONAL DUTIES OF **INSUREDS** UNDER COVERAGE A AND COVERAGE B
Any **person** who requests coverage under Coverage A or Coverage B, agrees not to sue **us**, except to determine coverage, until the amount of the **damages** is finally determined by:
(1) A written agreement, to which **we** consented, between the **person** seeking the coverage and the **person** who suffered the alleged **damages**; or
(2) A final judgment against the **person** seeking the coverage.

**OUR** RIGHT TO INVESTIGATE AND SETTLE **CLAIMS**
**We** may investigate, negotiate, and settle any **claim** without the authorization of any **insured**, and deduct the amount of any settlement from the limits of liability for Coverage A and Coverage B stated in the **Declarations**.

ADDITIONAL COVERAGES
**We** will take the following actions and pay the following costs and expenses only if they result from a **claim** covered by Coverage A or Coverage B. The payment of these costs and expenses will not reduce **our** limits of liability under Coverage A or Coverage B.
(1) **We** will pay all expenses **we** incur in the settlement of any **claim**.
(2) If a civil lawsuit is filed against an **insured** seeking **damages** that are covered under Coverage A or Coverage B, **we** will:
 (a) Defend the **insured** at **our** expense, using lawyers of **our** choice;
 (b) Pay all expenses **we** incur in the defense of that lawsuit; and
 (c) Pay all court costs assessed against that **insured**.
(3) **We** will pay **post-judgment interest** due on any portion of the **damages** owed that are within **our** limits of liability under Coverage A and Coverage B. However, **our** duty to pay it on any one **claim** ends when **we** offer to the judgment creditor, or pay into court, that part of the judgment **we** owe within **our** limits of liability under Coverage A and Coverage B, exclusive of all **post-judgment interest** and court costs.
(4) Up to the limit stated in this provision, **we** will pay the cost of any bond required:
 (a) By an appellate court as a condition precedent to appealing a lower court's judgment; or
 (b) To stay execution of a lower court's judgment while it is on appeal;
 if the appeal is from a judgment entered in a lawsuit for which **we** paid the fees of the **insured's** attorney through the date that judgment was entered. **We** have no duty to furnish or apply for any appeal bonds.

 The limit of **our** liability for such bond depends on the nature of the judgment.
 (a) If the judgment is for **damages** resulting from a single **bodily injury**, the limit of **our** liability for the cost of all such bonds is 10 percent of the "each **person**" limit of liability under Coverage A.
 (b) If the judgment is for **damages** resulting from more than one **bodily injury** or, if there are multiple judgments resulting from more than one **bodily injury**, the limit of **our** liability for the cost of all such bonds is 10 percent of the "each **accident**" limit of liability under Coverage A.
 (c) If the judgment is for **damages** resulting from **property damage**, the limit of **our** liability for the cost of all such bonds is 10 percent of the "each **accident**" limit under Coverage B, regardless of the number of such judgments.
(5) **We** will reimburse an **insured** up to $250 for each bail bond fee paid by that **insured** because of any one **accident** resulting from the **use** of an **auto** insured under Coverage A and Coverage B. **We** have no duty to furnish or apply for such bonds.
(6) **We** will reimburse an **insured** for reasonable and necessary expenses incurred at **our** request during the defense of a civil lawsuit. This does not include wages or salary lost by an **insured** who is attending any proceedings related to the defense of a civil lawsuit.

Each of the coverages listed above applies initially to all **insureds**. However, they apply to an **individual** who is an **insured** solely because he or she has **permission** or **general consent** to **use** the **described auto**, (Category 3 **insured**), only until **we**:

(a)    Offer to the claimant or judgment creditor, or pay into court, the full amount of **our** "**each person**" limit of liability under Coverage A and Coverage B, exclusive of judgment interest and court costs;

(b)    Pay into court the full amount of **our** "**each accident**" limit of liability under Coverage A and Coverage B, exclusive of judgment interest and court costs; or

(c)    Offer to the judgment creditor, or pay into court, that part of a judgment **we** owe within **our** limits of liability under Coverage A and Coverage B, exclusive of judgment interest and court costs.

After **we** take any one of the actions described in (a), (b), or (c), above, all of these additional coverages will cease to apply except those that are mandated by the laws of the state in which the lawsuit is properly pending.

EXCLUSIONS FROM COVERAGE A AND COVERAGE B
Coverage A and Coverage B do not cover any of the types of **damages** listed below.

(1)    **Damages** for **bodily injury** or **property damage** sustained by an **individual** employed by any **insured**, if the legal obligation arose out of an **accident** that took place in the course and scope of that employment. This exclusion does not apply to the **claim** of a **domestic employee**.

(2)    **Damages** for **property damage** to:

(a)    Real or personal property **owned** by any **insured**;

(b)    Personal property in the possession or control of the **insured** against whom the **claim** for **damages** is made;

(c)    Personal property being transported by the **insured** against whom the **claim** for **damages** is made; or

(d)    Real or personal property, including any vehicle, rented to or in the charge of the **insured** against whom the **claim** for **damages** is made.

This exclusion does not apply if the **insured's** liability is based on **property damage** to:

(a)    A dwelling, or private garage, rented by **insured**;

(b)    An **auto**, during the time it is loaned to any **insured** by a **person** engaged in the **auto business**, for demonstration purposes; or

(c)    A **temporary substitute auto**.

(3)    **Damages** owed to any fellow employee of an **insured** if the legal obligation arose out of an **accident** that took place in the course and scope of their mutual employment.

(4)    **Damages** that resulted from, and in the course of, any **insured's** duties as an employee of the United States Postal Service; if Title 28 of the United States Code (Federal Tort Claims Act), as amended, requires the United States Attorney General to defend the **insured** in any civil action that may result from that **bodily injury** or **property damage**.

(5)    **Damages** that resulted from the **use** of the **described auto** to transport **individuals**; if the **operator**, or any **owner**, of that **auto** was compensated for that transportation. This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried basis. This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to the **owner** or **operator** of the **described auto**.

(6)    **Damages** that resulted from the **use** of a **non-owned auto** by any **insured** to transport **individuals**, if that **insured** was compensated for that transportation. This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried basis. This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to the **owner** or **operator** of the **non-owned auto**.

(7)    **Damages** that resulted from any **use** of farm machinery other than towing it with the **described auto**.

(8)    **Damages** that resulted from the **use**, or **maintenance**, of the **described auto** by any **person** engaged in the **auto business**. This exclusion does not apply to the **use** or **maintenance** of the **described auto** by:

(a)    **You**; or

(b)    Any **insured** in an **auto business** in which **you** have an interest as proprietor, partner, or shareholder.

(9)    **Damages** that resulted from the **ownership**, **operation**, **use**, or **maintenance** of any **auto**, other than the **described auto**, by any **person** engaged in the **auto business**.

(10)    **Damages** that resulted from the **ownership**, **use**, or **maintenance** of any **auto** while towing a **trailer** that is not specifically insured under a policy of liability insurance, unless it is a **utility trailer** covered under Coverage A or Coverage B.

(11)    **Damages** that resulted from **war**.

(12)    **Damages** that resulted from, and in the course of, any **insured's** duties as an employee of any governmental unit or governmental agency.

(13)    **Damages** that are also covered under a nuclear energy liability insurance policy.

(14)    **Damages** owed to any **insured**, **relative**, or **resident** of an **insured's** household.

NUMBER OF **PERSONS** INSURED UNDER COVERAGE A AND COVERAGE B
The insurance under Coverage A and Coverage B applies separately to each **insured** against whom a **claim** is made. But the existence of **claims** against more than one **insured** will not increase **our** limit of liability for any one **accident**.

LIMIT OF **OUR** LIABILITY UNDER COVERAGE A AND COVERAGE B
The limits of **our** liability for Coverage A and Coverage B are stated in the **Declarations** and are further subject to the following limitations:

(1)    **Claims** against more than one **insured** will not increase **our** limit of liability for any one **accident**.

(2)    The limit of liability stated in the **Declarations** for Coverage A for "each **person**" is the limit of **our** liability for all **damages** arising out of one **person's bodily injury** from one **accident**. This limit includes all **damages** to others resulting from that **person's bodily injury** whether direct or derivative in nature.

(3)    The limit of liability stated in the **Declarations** for Coverage A for "each **accident**" is subject to the limit for "each **person**" and is the total limit of **our** liability for all **damages** arising out of **bodily injuries** to two or more **persons** from one **accident**. This limit includes all **damages** to others resulting from those injured **persons' bodily injuries** whether direct or derivative in nature.

(4)    The limit of liability stated in the **Declarations** for Coverage A, if denominated "single limit", is the total limit of **our**

liability for all **damages**, arising out of **bodily injuries** or **property damage** sustained by one or more **persons** from one **accident**.

(5) The limit of liability stated in the **Declarations** for Coverage B for "each **accident**" is the total limit of **our** liability for all **damages**, arising out of **property damage** sustained by one or more **persons** from one **accident**.

(6) Any amount paid or payable under Coverage C will be deducted from the amounts payable to that same **person** under Coverage A, unless the limit of liability for Coverage A has been exhausted.

(7) If both an **auto** and a **utility trailer** are covered under Coverage A or Coverage B, **we** will treat them as one vehicle with respect to **our** limits of liability.

(8) If a **person** who is an **insured** under Coverage A or Coverage B of this policy is **operating** a covered **auto** in another state or Canada, this policy will provide the minimum coverages required by the **financial responsibility law** applicable there, or the limits of liability shown in the **Declarations**, whichever is greater. If other insurance provides those required minimum limits to **our insured**, this policy will provide only the limits shown in the **Declarations** as applicable to that **insured**; and all conditions and exclusions stated in this policy are then fully enforceable including the provision related to insurance with other companies.

INSURANCE WITH OTHER COMPANIES

(1) If a **claim** covered by Coverage A or Coverage B of this policy is also covered by a policy issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, and that **claim** arose out of the **use** of the **described auto**, this policy will apply as primary coverage to that other insurance unless the **described auto** is also listed as a covered auto on that policy. In that case, the insurance provided by this policy will be prorated with that provided by the other policy based upon the limits of each.

(2) If a **claim** covered by Coverage A or Coverage B of this policy is also covered by a policy issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, and that **claim** arose out of the **use** of a **non-owned auto**, this policy will apply only as excess coverage to that other insurance.

CERTIFICATION OF COVERAGE

When this policy is certified as proof of financial responsibility for the future under any **financial responsibility law**, it will comply with the minimum requirements of that law but will not exceed the limits of liability stated in the **Declarations**. The certification will be effective only until **we** cancel it.

AUTOMATIC INSURANCE ON **UTILITY TRAILERS** UNDER COVERAGE A AND COVERAGE B

Coverage A and Coverage B apply to a **utility trailer**, but **we** will treat an **auto** and a **utility trailer** as one vehicle with respect to the limits of liability of Coverage A and Coverage B.

PART II - COVERAGE C – **AUTO** MEDICAL AND HOSPITAL BENEFITS

The following coverage is provided under this policy only if it is shown in the **Declarations**.

INSURING AGREEMENT FOR COVERAGE C

Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, **we** will pay the **reasonable charges** for **necessary goods and services** for the treatment of **bodily injury** sustained by an **insured**, if such **bodily injury** directly results from an **accident** caused by the **occupancy**, **use**, or **maintenance** of an **auto**. The **reasonable charges** must be incurred within two years of the **accident** date.

Subject to the limit of **our** liability for this coverage stated in the **Declarations**, **we** will pay the **reasonable charges** for funeral services of an **insured**, if death directly results from an **accident** caused by the **occupancy**, **use**, or **maintenance** of an **auto**. The **reasonable charges** must be incurred within two years of the **accident** date.

DEFINITION OF **INSURED** USED IN COVERAGE C

In Coverage C **insured** means **you** or a **relative**. **Insured** also means:

(1) **Passengers** in the **described auto**; but these **individuals** become **insureds** only after the limits of all other  motor vehicle medical and hospital benefits insurance in which they are specifically named as insureds have been exhausted; and

(2) **Individuals**, other than those **occupying** a vehicle, who are **struck by** the **described auto**, while they are:
    (a) Pedestrians;
    (b) Bicyclists;
    (c) Motorcyclists;
    (d) In a horse-drawn wagon or cart; or
    (e) Riding on an animal;
but these **individuals** become **insureds** only after the limits of all other motor vehicle medical and hospital benefits insurance in which they are specifically named as insureds have been exhausted.

EXCLUSIONS FROM COVERAGE C

Coverage C does not cover:

(1) Charges for the treatment of **bodily injury** sustained by an **insured** who intended to injure himself or herself.

(2) Charges for the treatment of **bodily injury** sustained by an **insured** while any **insured** was committing a felony, or seeking to elude lawful apprehension or arrest by a law enforcement official.

(3) Charges for the treatment of **bodily injury** sustained by any **person** during the time any **auto** is being **used** to transport **individuals**, if either the **owner**, or the **operator**, of that **auto** is compensated for the transportation of those **individuals**. This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried, basis. This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to the **owner** or the **operator** of the **auto**.

(4) Charges for the treatment of **bodily injury** sustained by any **person** if benefits are:
    (a) Payable to, or on behalf of, such **person** under any **compensation law** for the same **accident**; or

(b)  Required by any **compensation law** to be provided to, or on behalf of, such **person** for the same **accident**.

(5)  Charges for the treatment of **bodily injury** sustained by an **insured** while **occupying** a **motor vehicle owned** by **you** or any **resident** of **your** household that is not the **described auto** under this policy.

LIMIT OF **OUR** LIABILITY UNDER COVERAGE C
The limit of liability for Coverage C is stated in the **Declarations** and is subject to the following limitations:

(1)  The limit stated in the **Declarations** for Coverage C for "each **person**" is the limit of **our** liability for all covered charges incurred by, or on behalf of, each **person** who sustains **bodily injury** as a result of one **accident**.

(2)  No **person** may recover duplicate benefits for the same elements of loss by combining this coverage with other coverage provided by:
(a)  This policy;
(b)  Another policy issued by **us**;
(c)  A policy issued by another company; or
(d)  Another state's law that mandates personal injury protection or similar benefits.

INSURANCE WITH OTHER COMPANIES

(1)  If one or more other company's motor vehicle medical and hospital benefits insurance also applies to a **claim** made by **you** or a **relative** under Coverage C, **we** will pay the proportionate share that **our** limit of liability bears to the total limits of all such applicable coverages up to the highest limit of any one of the applicable policies.

(2)  If one or more other company's motor vehicle medical and hospital benefits insurance also applies to a **claim** made by

someone other than **you** or a **relative**, and that insurance provides the amount of coverage mandated by section 23-89-202 of the Arkansas Code, no coverage is provided under Coverage C.

(3)  If one or more other company's motor vehicle medical and hospital benefits insurance also applies to a **claim** made by someone other than **you** or a **relative**, and that insurance provides less than the amount of coverage mandated by section 23-89-202 of the Arkansas Code, Coverage C will provide only the balance of the amount required by the statute.

(4)  An **insured** may not recover duplicate benefits for the same elements of loss under this and any similar insurance.

PAYMENTS UNDER COVERAGE C
**We** may pay the **insured** or any **person** or organization rendering the services and such payment will reduce the amount payable under this coverage.

**OUR** RIGHT TO REIMBURSEMENT UNDER COVERAGE C
If **we** make a payment to an **insured** under Coverage C, and that **insured** recovers an amount of money from a **person** responsible for the **bodily injury** on which **our** payment was based, the **insured** agrees to reimburse **us** the amount of **our** payment less **our** proportionate share of the cost of collecting the money.  Any **insured** who accepts a payment under Coverage C agrees, and acknowledges, that **we** have a lien upon any tort recovery, related to the same **bodily injury**, he or she may make.

**We** will not enforce **our** rights under this provision until the **insured** who received **our** payment is fully compensated for his, her, or its, loss.

PART III - COVERAGE D - **AUTO ACCIDENTAL** DEATH BENEFIT

The following coverage is provided under this policy only if it is shown in the **Declarations**.

INSURING AGREEMENT FOR COVERAGE D
Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, **we** will pay the **accidental** death benefit stated in the **Declarations** to the personal representative of an **insured** if the **insured's** death directly resulted from an **auto accident** within one year from the date of that **accident**.

DEFINITION OF **INSURED** USED IN COVERAGE D
In Coverage D **insured** means **you** or a **relative**.  **Insured** can also mean:

(1)  **Passengers** in the **described auto**; but these **individuals** become **insureds** only after the limits of all other motor vehicle accidental death benefits insurance in which they are specifically named as insureds have been exhausted; and

(2)  **Individuals**, other than those **occupying** a vehicle, who are **struck by** the **described auto**, while they are:
(a)  Pedestrians;
(b)  Bicyclists;
(c)  Motorcyclists;
(d)  In a horse-drawn wagon or cart; or
(e)  Riding on an animal;
but these **individuals** become **insureds** only after the limits of all other motor vehicle accidental death benefits insurance in

which they are specifically named as insureds have been exhausted.

EXCLUSIONS FROM COVERAGE D
Coverage D does not apply if:

(1)  The death resulted from **bodily injury** sustained by an **insured** who intended to injure himself or herself.

(2)  The death resulted from **bodily injury** sustained by an **insured** who was committing a felony, or seeking to elude lawful apprehension or arrest by a law enforcement official.

(3)  The death resulted from **bodily injury** sustained by an **insured** during the time any **auto** is being **used** to transport **individuals**, if either the **owner**, or the **operator**, of that **auto** is compensated for the transportation of those **individuals**. This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried, basis. This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to the **owner** or the **operator** of the **auto**.

(4)  The death resulted from **bodily injury** sustained by an **insured** while **occupying** a **motor vehicle owned** by **you** or any **resident** of **your** household that is not the **described auto** under this policy.

LIMIT OF **OUR** LIABILITY UNDER COVERAGE D
The limit of liability for Coverage D is stated in the **Declarations**

Exhibit D

and is subject to the following limitation:

(1)  No **person** may recover duplicate benefits for the same elements of loss by combining this coverage with other coverage provided by:
    (a)  This policy;
    (b)  Another policy issued by **us**;
    (c)  A policy issued by another company; or
    (d)  Another state's law that mandates personal injury protection or similar benefits.

## INSURANCE WITH OTHER COMPANIES

(1)  If one or more other company's motor vehicle accidental death benefits insurance also applies to a **claim** made by **you** or a **relative** under Coverage D, **we** will pay the proportionate share that **our** limit of liability bears to the total limits of all such applicable coverages up to the highest limit of any one of the applicable policies.

(2)  If one or more other company's motor vehicle accidental death benefits insurance also applies to a **claim** made by someone other than **you** or a **relative**, and that insurance provides the amount of coverage mandated by section 23-89-202 of the Arkansas Code, no coverage is provided under Coverage D.

(3)  If one or more other company's motor vehicle accidental death benefits insurance also applies to a **claim** made by someone other than **you** or a **relative**, and that insurance provides less than the amount of coverage mandated by section 23-89-202 of the Arkansas Code, Coverage D will provide only the balance of the amount required by the statute.

(4)  An **insured** may not recover duplicate benefits for the same elements of loss under this and any similar insurance.

## PAYMENTS UNDER COVERAGE D

**We** will pay the personal representative of the **insured** or any **person** authorized by a court having jurisdiction over this obligation to collect on behalf of the **insured**.

## PART IV – COVERAGE E – **UNINSURED MOTOR VEHICLE** LIABILITY COVERAGE

The following coverage is provided under this policy only if it is shown in the **Declarations**. It is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

## INSURING AGREEMENT FOR COVERAGE E

Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, **we** will pay **damages** that an **insured**, or an **insured's** legal representative, is legally entitled to recover from the **owner** or **operator** of an **uninsured motor vehicle** because of an **occurrence** that arose out of the **ownership** or **use** of that **uninsured motor vehicle**.

## DEFINITIONS USED IN COVERAGE E

In Coverage E:

(1)  **Damages** means the amount of money payable to an **insured** for **bodily injuries** that directly result from the **ownership** or **use** of an **uninsured motor vehicle**. The following items are excluded from the definition of **damages**:
    (a)  **Punitive damages**;
    (b)  Money payable to any **insured** as a result of an agreement of any kind;
    (c)  Money payable to an **insured** for **property damage**; or
    (d)  **Consequential loss**.

(2)  **Insured** means an **individual** included in one of the following categories:
    CATEGORY A:
    (a)  **You**;
    (b)  **Relatives**; and
    (c)  **Individuals** listed in the **Declarations** as an "additional listed insured" who do not **own** a **motor vehicle**, and whose **spouse** does not **own** a **motor vehicle**.
    CATEGORY B:
    Any **individual** who is not included in Category A, while he or she is **using** the **described auto** with **permission** or **general consent**.

## ADDITIONAL DUTIES OF ALL **INSUREDS** IN THE EVENT OF A **CLAIM** UNDER COVERAGE E

(1)  If a **hit-and-run motor vehicle** causes **bodily injury** to an **insured**, he or she must notify **us** within 24 hours of the **accident**, unless the **accident** renders him or her mentally or physically unable to do so. In that case, the **insured** must notify **us** as soon as he or she is mentally and physically able to do so.

(2)  If an **insured**, or an **insured's** legal representative, makes a **claim** for **damages** against any **person**, and a portion of those **damages** may be payable under this coverage, that **insured** must immediately notify **us** of that **claim**.

(3)  If an **insured**, or an **insured's** legal representative, institutes a lawsuit seeking **damages** against any **person**, and a portion of those **damages** may be payable under this coverage, that **insured** must immediately send **us** a copy of the summons, petition, complaint, or other process issued in connection with that lawsuit.

## COMPLETE EXCLUSIONS FROM COVERAGE E

Coverage E does not apply:

(1)  If, without **our** written consent, the **insured** or the **insured's** legal representative settles or releases any of the **insured's** rights of recovery against the **owner** or **operator** of an **uninsured motor vehicle** who is, or may be, legally liable for **damages** payable under this coverage.

(2)  If any portion of the **damages** result from **bodily injury** sustained while **occupying** a **motor vehicle** without **permission** or **general consent**.

(3)  If any portion of the **damages** are sustained while **occupying** a **motor vehicle owned** by **you** or any **resident** of **your** household that is not the **described auto** under this policy.

(4)  If any portion of the **damages** resulted from **bodily injury** sustained while **occupying** a **motor vehicle** that **you**, a **relative**, or any **resident** of **your** household has **general consent** to use.

(5)  If any portion of the **damages** resulted from **bodily injury** that a reasonable **individual** would expect to result from the **insured's** intentional acts.

## PARTIAL EXCLUSIONS FROM COVERAGE E

Coverage E provides only the minimum limits required by an applicable **uninsured motorist insurance law** or **financial responsibility law** if the **damages** result from:

(1)  An **occurrence** that was not an **accident**; or

(2)  **Bodily injury** to an **individual** who is not an **insured** under this coverage.

### EFFECT OF **UNINSURED MOTORIST INSURANCE LAWS** OR **FINANCIAL RESPONSIBILITY LAWS**
If an **uninsured motorist insurance law** or **financial responsibility law** renders any exclusion in Coverage E unenforceable, **we** will provide only the minimum limits required by that law. If other insurance covers **our insured's claim** and provides those required minimum limits, the provisions of this policy are fully enforceable.

All provisions of Coverage E that exceed the requirements of any applicable **uninsured motorist insurance law** or **financial responsibility law**, or are not governed by it, are fully enforceable.

### NUMBER OF **PERSONS** INSURED UNDER COVERAGE E
The insurance under Coverage E applies separately to each **insured**. The presentation of **claims** by more than one **insured** will not increase **our** limit of liability for any one **occurrence**.

### LIMIT OF **OUR** LIABILITY UNDER COVERAGE E
The limits of liability for Coverage E are stated in the **Declarations** and are subject to the following limitations:
(1)  If more than one **insured** presents a **claim** for **damages** caused by one **occurrence**, **our** limits are not increased.
(2)  If more than one **uninsured motor vehicle** is involved, **our** limits are not increased.
(3)  The limit shown for "each **person**" is the limit of **our** liability for all **damages** of one **individual** caused by one **occurrence**. This limit includes all **damages claimed** by others resulting from that **individual's bodily injury**, whether direct or derivative in nature.
(4)  The limit shown for "each **accident**" is subject to the limit for "each **person**" and is the total limit of **our** liability for all **damages** of two or more **individuals** caused by one **occurrence**. This limit includes all **damages claimed** by others resulting from those injured **individuals'** bodily injuries, whether direct or derivative in nature.
(5)  **We** will reduce **our** payment by the amount of those **damages** paid by the **owner** or **operator** of any **uninsured motor vehicle** who caused the **bodily injury** on which the **insured's claim** is based.
(6)  Any amount paid or payable under Coverage C, Coverage D, and Coverage K, of this policy will not be paid as **damages** under this coverage. This does not reduce the limits of liability of this coverage.

### INSURANCE WITH OTHER COMPANIES
If a **claim** covered by Coverage E of this policy is also covered by uninsured motorist insurance issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, the coverage under this policy will apply only as excess over all such other insurance. Coverage E will then apply only in the amount that its limit of liability exceeds the combined limits of all such other uninsured motorist insurance.

If it is impossible to reconcile the provisions of all applicable policies to determine the order in which their benefits apply, the limits of Coverage E will be prorated with all such other policies, based on the applicable limits of each, up to the combined limits of all such policies.

### PAYMENTS UNDER COVERAGE E
**We** will pay any amount due under Coverage E to:
(1)  The **insured**;
(2)  The **insured's** parent or guardian if the **insured** is a minor;
(3)  Any **person** legally authorized to maintain and settle a **claim** for the **insured's** death, if **our** payment is for **damages** resulting from the **insured's** death;
(4)  Any **person** legally authorized to receive the payment for the **insured**; or
(5)  Any **person** legally entitled to receive the payment because of an assignment by the **insured**.
**We** may, at **our** option, pay any amount due under this coverage to any **person** listed above and that payment will fully discharge **our** obligations under Coverage E.

### TRUST AGREEMENT
If **we** make any payment under Coverage E:
(1)  **We** will be entitled to the proceeds of any settlement or judgment the **insured** obtains from or against any **person** for the **damages** that **our** payment was based upon. **Our** right extends only to the amount of **our** payment.
(2)  Any **person** who **we** pay will hold in trust, for **our** benefit, all rights of recovery that the **insured** has, or later acquires, against any other **person** who may be responsible for the **damages** that **our** payment was based upon.
(3)  Any **person we** pay will do whatever is necessary to secure all rights of recovery that the **insured** may have against any other **person** who may be responsible for the **damages** that **our** payment was based upon, and will do nothing to prejudice those rights.
(4)  If **we** request it in writing, any **person we** pay, and any **insured** on whose behalf the payment was made will take, through any representative designated by **us**, such action as may be necessary to recover **our** payment, from any **person** legally responsible for the **bodily injury** that **our** payment was based upon. Such action may be taken in the name of the **insured** on whose behalf **our** payment was made. **We** will also be reimbursed, to the extent of any recovery, the expenses, costs, and attorneys' fees **we** incurred in connection with the action.
(5)  Any **person** who **we** pay will execute and deliver to **us** such legal instruments and papers as may be appropriate to secure the rights and obligations created by this subsection.

**We** will not enforce **our** rights under this provision until the **insured** who received **our** payment is fully compensated for his, her, or its, loss.

PART V – **AUTO** PHYSICAL DAMAGE COVERAGES
COVERAGE F – COLLISION COVERAGE
COVERAGE G – COMPREHENSIVE COVERAGE
COVERAGE J – REIMBURSEMENT FOR EMERGENCY ROAD SERVICE

The following coverages are provided under this policy only if they are shown in the **Declarations** and are subject to all conditions, exclusions, limitations of **our** liability, and the **deductible**, stated in this policy.

STATUTORY NOTICE
IN THE REPAIR OF YOUR COVERED MOTOR VEHICLE UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF MOTOR VEHICLE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER.  THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE, AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

INSURING AGREEMENT FOR COVERAGE F – COLLISION COVERAGE
**We** will pay the **direct loss** resulting from **property damage** to the **described auto** if it is caused by:
(1)   **Accidental** upset of the **described auto**; or
(2)   **Accidental** collision between the **described auto** and another object, other than:
    (a)   Hail;
    (b)   Falling objects;
    (c)   Flying objects;
    (d)   Objects being blown by the wind;
    (e)   People;
    (f)   Birds; or
    (g)   Animals;
but this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

**We** will pay the amount by which the **direct loss** exceeds **your deductible**.

No **deductible** applies if the collision is with another vehicle **we** insure, unless that other vehicle is **owned** by **you** or a **resident** of **your** household.

It is **our** right to elect whether **we** pay the **comparable value** or the **cost to repair** the **described auto** or any of its parts.

If a **claim** is covered under this coverage, **we** will also pay the reasonable cost **you** incur immediately after an **accident** to protect the **described auto** and its equipment from further damage. This does not include the cost of renting other transportation.

If **we** elect to pay the **comparable value** of a part that requires installation, **we** will pay to remove the damaged part and to install the **replacement part**.

If **we** elect to pay the **comparable value** of the **described auto** as a whole, **we** will also pay the amount by which that value was increased by the addition of items covered under the section titled: "LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G", up

to the limit of that coverage; unless **we** return those items to **you** under the provisions of the section titled: "**CLAIM** SETTLEMENT OPTIONS".

**We** will not pay any **claim** under this coverage if that **claim** was paid under Coverage G.

INSURING AGREEMENT FOR COVERAGE G – COMPREHENSIVE COVERAGE
**We** will pay the **direct loss** resulting from **property damage** to the **described auto** unless it is caused by:
(1)   **Accidental** upset of the **described auto**; or
(2)   **Accidental** collision between the **described auto** and an object, other than:
    (a)   Hail;
    (b)   Falling objects;
    (c)   Flying objects;
    (d)   Objects being blown by the wind;
    (e)   People;
    (f)   Birds; or
    (g)   Animals.
**We** will pay the **direct loss** resulting from **property damage** to the **described auto** caused by **accidental** collision between the **described auto** and the objects listed in subparagraphs (a) through (g), above, under this coverage. But this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

**We** will pay the amount by which the **direct loss** exceeds **your deductible**.

It is **our** right to elect whether **we** pay the **comparable value** or the **cost to repair** the **described auto** or any of its parts.

If a **claim** is covered under this coverage, **we** will also pay:
(1)   The reasonable cost **you** incur immediately after a covered event to protect the **described auto** and its equipment from further damage. This does not include the cost of renting other transportation; and
(2)   The reasonable cost, up to a maximum of $500, that **you** incur for replacing and reprogramming keys or door locks, if the **described auto** was stolen and then returned to **you**.

If **we** elect to pay the **comparable value** of a part that requires installation, **we** will pay to remove the damaged part and to install the **replacement part**.

If **we** elect to pay the **comparable value** of the **described auto** as a whole, **we** will also pay the amount by which that value was increased by the addition of items covered under the section titled: "LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G", up to the limit of that coverage; unless **we** return those items to **you** under the provisions of the section titled: "**CLAIM** SETTLEMENT OPTIONS".

Exhibit D
15

If covered property is stolen, but recovered before **we** fully pay **your claim**, **we** may return it, at **our** expense, either to **you** or to **your** address shown in the **Declarations**. If **we** do so, **we** will pay **you** the **direct loss** for damage that occurred between the time of its theft and the time of its return. Abandonment of the property to **us** is not permitted.

If the **described auto** is stolen, **we** will pay up to $30 per day for any additional transportation costs **you** paid because of the fact that the **described auto** was unavailable for **your use**. **We** will pay this benefit for a maximum of 45 days. This coverage begins 48 hours after the theft has been reported to **us** and ends when the **described auto** is returned to **you**, or **we** offer to settle **your claim** under this coverage, whichever occurs sooner. In no event will **we** be liable, under this coverage, for more than 45 days of benefits. No **deductible** applies to this benefit.

**We** will not pay any **claim** under this coverage if that **claim** was paid under Coverage F.

INSURANCE ON **NON-OWNED AUTOS** AND **RENTAL AUTOS** UNDER COVERAGE F AND COVERAGE G
Coverage F and Coverage G, apply to **non-owned autos** (including **rental autos** that meet the definition of **non-owned autos**) while **you** or a **relative** are in possession of them. But this extension of coverage does not apply to any **auto** with a gross vehicle weight rating (GVWR) of more than 12,000 pounds.

LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G
Coverage F and Coverage G, apply to the types of items listed below. But the maximum **we** will pay for all such items stolen or damaged in any one **accident** is $5000, regardless of the number of such items stolen or damaged; unless this limit is removed by an endorsement to this policy:
(1)  Paint applied to the **described auto** after its **original sale**;
(2)  Parts and equipment **permanently attached** to the **described auto** after its **original sale**;
(3)  Wireless components of equipment that was **permanently attached** to the **described auto** after its **original sale**; if the **permanently attached** component is essential to the functioning of the wireless component; and
(4)  Child restraint systems in the **described auto** at the time of the **accident**.

It is **our** right to elect whether **we** pay the **comparable value** or the **cost to repair** the paint and equipment covered by this section.

If **we** request them, **you** must provide proof of purchase and installation records for the covered items to obtain this coverage.

LIMITED INSURANCE ON **NON-OWNED UTILITY TRAILERS** AND THEIR CARGO UNDER COVERAGE F AND COVERAGE G
Coverage F and Coverage G are extended to a **utility trailer** that is not **owned** by any **insured**, or a **resident** of any **insured's** household, while it is in **your** possession. Coverage F and Coverage G are also extended to cargo being hauled in any **utility trailer** covered under this provision, if that cargo is not **owned** by any **insured** or a **resident** of any **insured's** household. The limit of **our** liability is $500 for the **trailer** and all covered cargo combined.

Neither of those coverages extends to a **utility trailer**, or its cargo, that is otherwise insured for **property damage** regardless of the limits or **deductible** amount applying under such other insurance.

**We** will treat an **auto** and a **utility trailer** as separate vehicles with respect to the limits of liability and **deductible** provisions of Coverage F and Coverage G.

INSURING AGREEMENT FOR COVERAGE J – REIMBURSEMENT FOR EMERGENCY ROAD SERVICE
**We** will pay one of the following amounts if the **described auto accidentally** becomes disabled:
(1)  The reasonable cost **you** paid for labor necessary to eliminate the cause of the disablement, if that labor is performed at the place it is disabled; or
(2)  The reasonable cost **you** paid for towing it to the nearest place it can be repaired to the extent necessary to eliminate the cause of the disablement.
But this agreement is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

**We** will not pay any **claim** under this coverage if:
(1)  That **claim** was paid under Coverage F;
(2)  That **claim** was paid under Coverage G;
(3)  **You** were reimbursed for the cost of labor or towing by any other source; or
(4)  **You** are contractually entitled to be reimbursed for the cost of labor or towing by any other source.

ADDITIONAL DEFINITION USED IN COVERAGE F, COVERAGE G, AND COVERAGE J
In Coverage F, Coverage G, and Coverage J, **insured** means **you**.

**YOUR** ADDITIONAL DUTIES UNDER COVERAGE F AND COVERAGE G
A **person** who makes a **claim** under Coverage F or Coverage G must:
(1)  Provide **us** with any written proofs of loss **we** require.
(2)  Take reasonable steps after any covered event to protect the covered **auto** and its equipment from more damage. This includes ceasing to **use** it after it is initially damaged, if a reasonable **individual** would recognize that continuing to **use** it might cause **additional** damage.
(3)  Promptly report any theft of covered **auto**, or any part, to the police.
(4)  Allow **us** to inspect and appraise the covered **auto** or part before it is disposed of and before any repairs are started.

EXCLUSIONS FROM BOTH COVERAGE F AND COVERAGE G
Coverage F and Coverage G do not cover **property damage**:
(1)  Sustained during the time any **auto**, covered under Coverage F or Coverage G, is being **used** to transport **individuals**, if either the **owner**, or the **operator**, of that **auto** is compensated for the transportation of those **individuals**. This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried basis. This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to **you** or the **operator** of the **auto**.
(2)  Resulting from **war**.

(3) To tires, unless they are attached to an **auto**, covered under Coverage F or Coverage G, and are damaged by:
    (a) Fire;
    (b) Vandalism;
    (c) Theft; or
    (d) An **accident** that also damaged other parts of that covered **auto**.
(4) Resulting from the conversion, embezzlement, or concealment, of an **auto**, covered under Coverage F or Coverage G, by any **person** who has possession of it because of a lien, rental agreement, lease agreement, or sales agreement.
(5) Resulting from radioactive contamination.
(6) To a detachable living-quarters unit equipped with **permanently attached** sleeping or cooking facilities.
(7) To any radar detection device.
(8) For which the **insured** has received payment from any other source. If that payment was in an amount less than that to which the **insured** is entitled under one of these coverages, **we** will pay the balance of the **insured's** covered loss.
(9) For which the **insured** is contractually entitled to receive payment from any other source. If that entitlement is an amount less than that to which the **insured** is entitled under one of these coverages we will pay the balance of the **insured's** covered loss.
(10) For which the **insured** has released any **person** who is liable for the **property damage** on which the **claim** is based.
(11) If the applicable statute of limitations bars an **insured's** claim against any **person** legally responsible for the **property damage** on which the **claim** is based.
(12) Resulting from the continued **use** of an **auto**, covered under Coverage F or Coverage G, after it sustained **property damage**, if a reasonable **individual** would recognize that continuing to **use** it might cause additional **property damage**.
(13) Covered by any type of collision damage waiver, collision insurance, comprehensive insurance, or any similar contract, purchased by an **insured** in connection with the rental of a **rental auto**.

EXCLUSION FROM COVERAGE G ONLY
Coverage G does not cover **property damage** to any part of the **described auto** or a **non-owned auto** caused directly or indirectly, in whole or in part, by wear and tear, mold, fungus, spores, freezing, mechanical breakdown, mechanical failure, electrical breakdown, or electrical failure, of the damaged part itself or any other part of the same vehicle. This exclusion does not apply to:
(1) **Property damage** resulting from mold, spores, or fungus, that occurs after, and because of, a covered **accident**;
(2) **Property damage** that occurred while the vehicle was missing after a theft covered by Coverage G; or
(3) **Property damage** caused by a fire that directly resulted from one of these excluded causes.

ADDITIONAL EXCLUSIONS APPLICABLE TO **NON-OWNED AUTOS** AND **RENTAL AUTOS**
Coverage F and Coverage G do not cover a **non-owned auto** (or a **rental auto** that meets the definition of **non-owned auto**) if:
(1) It is:
    (a) **Occupied** by its **owner** or the **owner's spouse**;
    (b) **Occupied** by a stockholder, member, or officer of any legal entity that **owns** it;

    (c) On loan to anyone, for demonstration purposes, by a **person** engaged in the **auto business**; or
    (d) Being **used** to carry property for a charge.
(2) **Our** coverage benefits any carrier or bailee for hire obligated to pay any part of the loss.
(3) It is otherwise **insured** for **property damage** regardless of the **deductible** amount applying under such other insurance. This exclusion does not apply to a **rental auto**.
(4) In connection with the renting of a **rental auto**, an **insured** purchases a collision damage waiver, collision insurance, comprehensive insurance, or any similar contract that specifically applies to **property damage** or **consequential loss** to that **rental auto**.

**CLAIM** SETTLEMENT OPTIONS UNDER COVERAGE F AND COVERAGE G
If **we** elect to pay the **comparable value** of any item, **we** may, at **our** option, return any equipment covered under the section titled: "LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G" to **you**, and determine the **comparable value** of the other property on which the **claim** was based without considering that returned equipment. **We** will return that equipment only if it is not damaged or **we** pay to **repair** it.

If **we** elect to pay the **comparable value** of any item, **we** will do so only if all **owners** of that item sign, and deliver to **us**, all legal documents **we** request to give **us** full **ownership** of it.

If **we** elect to pay the **cost to repair** any item, **we** have the right to determine if **replacement parts** are needed, and the type of **replacement parts** that will be considered in **our** calculation of the **cost to repair**. **You** may choose to use other **replacement parts** in the actual **repair** of the item. If **you** do so, **you** must pay any charges over the **cost to repair**.

HOW SETTLED **CLAIMS** ARE PAID UNDER COVERAGE F AND COVERAGE G
These provisions apply to the payment of all **claims** under Coverage F and Coverage G except those involving payment for **rental autos** and those involving the payment for only glass parts.
(1) **CLAIMS** WITH A LOSS PAYEE
    If a loss payee is shown in the **Declarations**, **we** will pay settled **claims** under Coverage F or Coverage G as follows:
    (a) If **we** elect to pay the **comparable value**, **we** will pay that amount jointly to **you** and the loss payee unless **you** authorize **us** to pay the loss payee separately.
    (b) If **we** elect to pay the **comparable value**, and, prior to **our** payment, the loss payee has taken possession of the vehicle or part, **we** will pay that amount to the loss payee.
    (c) If **we** elect to pay the **cost to repair**, **we** will pay **our** estimate of that amount to **you** and, at **our** option, jointly to the loss payee.
    (d) If **we** elect to pay the **cost to repair** and, at the time **we** pay, the vehicle or part has been **repaired** but the repairer has not been paid, **we** will pay **our** estimate of the **cost to repair** jointly to **you** and the repairer; and, at **our** option, jointly to the loss payee.
    (e) If **we** have paid **our** estimate of the **cost to repair** as required in subparagraph (c) or (d), above, and the repairer charges **you** for covered parts or services that

were not included in **our** estimate of the **cost to repair**, **we** will pay the amount of that charge:
(i)   Jointly to **you** and the repairer if the repairer is still in possession of the vehicle or part; or
(ii)  To the repairer only if **you** have taken possession of the **repaired** vehicle or part.

If **we** pay the loss payee for a loss that is not covered, **we** are entitled to the loss payee's right of recovery against **you** to the extent of **our** payment. **Our** right of recovery will not impair the loss payee's right to its full recovery.

The coverage for the loss payee's interest is only valid until **we** terminate it. The date of termination will be at least 10 days after the date **we** mail the termination notice to the loss payee's address shown in the **Declarations**.

**We** will not terminate coverage for the loss payee's interest because of:
(a)   Negligence by any **owner** of the **described auto**, except the failure to pay the premium when due;
(b)   A change in the **described auto's ownership** that is unknown to **us**, unless the loss payee knew of it and failed to tell **us** within 10 days of the acquisition of that knowledge; or
(c)   An error in accurately describing the **described auto**.
(2)   **CLAIMS** WITHOUT A LOSS PAYEE
If no loss payee is shown in the **Declarations**, **we** will pay settled **claims** under Coverage F or Coverage G as follows:
(a)   If **we** elect to pay the **comparable value**, **we** will pay that amount to **you**.
(b)   If **we** elect to pay the **cost to repair**, **we** will pay **our** estimate of that amount to **you**.
(c)   If **we** elect to pay the **cost to repair** and, at the time **we** pay, the vehicle or part has been **repaired** but the repairer has not been paid, **we** will pay **our** estimate of the **cost to repair** jointly to **you** and the repairer.
(d)   If **we** have paid **our** estimate of the **cost to repair** as required in subparagraph (b) or (c), above, and the repairer charges **you** for covered parts or services that were not included in **our** estimate of the **cost to repair**, **we** will pay the amount of that charge:
(i)   Jointly to **you** and the repairer if the repairer is still in possession of the vehicle or part; or
(ii)  To the repairer only if **you** have taken possession of the **repaired** vehicle or part.

HOW SETTLED **CLAIMS** FOR **RENTAL AUTOS** ARE PAID UNDER COVERAGE F AND COVERAGE G
When **we** agree to a settlement of a covered **claim** on a **rental auto**, **we** will pay the **owner** of that **rental auto**.

A-19.4-A

HOW SETTLED **CLAIMS** INVOLVING ONLY GLASS PARTS ARE PAID UNDER COVERAGE F AND COVERAGE G
If a **claim** involves damage to glass parts only, the following provisions apply:
(1)   If **we** elect to pay the **cost to repair**, **we** will do so only after all **repairs** are completed.
(2)   If **we** elect to pay the **comparable value** of a glass part (as opposed to the **comparable value** of the **described auto** as a whole), **we** will do so only after the part is installed.
(3)   When **we** agree to pay a **claim**, **we** may, at **our** option, pay either the **person** who replaced or **repaired** the glass parts, or the **person** who arranged for that **repair** or replacement; unless **you** paid for the **repair** or replacement, in which event **we** will pay **you**.
(4)   If **we** elect to pay the **cost to repair** without using **replacement parts**, no **deductible** applies.

INSURANCE WITH OTHER COMPANIES
(not applicable to **rental autos**)
If a **claim** covered by Coverage F, Coverage G, or Coverage J, of this policy is also covered by a policy issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, the coverage under this policy will apply only as excess over such other insurance; but this provision does not apply to **rental autos**.

If it is impossible to reconcile the provisions of all applicable policies to determine the order in which their benefits apply, the limits of Coverage F and Coverage G will be prorated with all such other policies, based on the applicable limits of each, up to the total limits of liability of all the applicable policies.

INSURANCE AND COLLISION DAMAGE WAIVERS ON **RENTAL AUTOS**
(1)   If a **claim** covered by Coverage F, Coverage G, or Coverage J, of this policy is also covered by a policy issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, the coverages under this policy will apply to the loss to that **auto** on a primary basis without contribution from that other insurance, unless that other coverage was purchased by the **insured** in connection with the rental of the **auto**.
(2)   If an **insured** purchases collision insurance, comprehensive insurance, a collision damage waiver, or any similar contract when renting an **auto** and it specifically applies to **property damage** or **consequential loss** to that **rental auto**, Coverage F and Coverage G do not cover any **claims** based on **property damage** to that vehicle.

INCOME DISABILITY BENEFITS ENDORSEMENT – A-928.7-A

COVERAGE K - INCOME DISABILITY BENEFITS
The following coverage is provided under this policy only if it is shown in the **Declarations**.

INSURING AGREEMENT FOR COVERAGE K
Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, **we** will pay the following benefits if an **insured** sustains **bodily injury** as the result of an **accident** caused by the **use** or **maintenance** of an **auto**:

A-928.7-A

(1)  If the **insured** is an income earner, benefits equal to 70 percent of the loss if income from work during a period commencing eight days after the date of **accident**, and not to exceed 52 weeks, but subject to a maximum of $140 per week; or

(2)  If the **insured** is a non-income earner, benefits equal to the amount of expenses not to exceed $70 per week, or any fractional part of a week, which are reasonably incurred for essential services in lieu of those the **insured** would have performed without income during a period commencing eight days after the date of **accident**, not to exceed 52 weeks.

## DEFINITION OF **INSURED** USED IN THIS COVERAGE

In this coverage **insured** means **you** or a **relative**.  **Insured** can also mean:

(1)  **Passengers** in the **described auto**; but these **individuals** become **insureds** only after the limits of all other motor vehicle income disability benefits insurance in which they are specifically named as insureds have been exhausted; and

(2)  **Individuals**, other than those **occupying** a vehicle, who are **struck by** the **described auto**, while they are:

    (a)  Pedestrians;
    (b)  Bicyclists;
    (c)  Motorcyclists;
    (d)  In a horse-drawn wagon or cart; or
    (e)  Riding on an animal;

but these **individuals** become **insureds** only after the limits of all other motor vehicle income disability benefits insurance in which they are specifically named as insureds have been exhausted.

## EXCLUSIONS FROM THIS COVERAGE

This coverage does not apply if the **bodily injury** is sustained by an **insured**:

(1)  Who intended to injure himself or herself;

(2)  While committing a felony, or seeking to elude lawful apprehension or arrest by a law enforcement official;

(3)  During the time any **auto** is being **used** to transport **individuals**, if either the **owner**, or the **operator**, of that **auto** is compensated for the transportation of those **individuals**.  This exclusion applies irrespective of whether the compensation is paid on a per-passenger, per-mile, hourly, or salaried, basis.  This exclusion does not apply if the only compensation paid is for reimbursement of expenses related to that particular trip and it is paid to the **owner** or the **operator** of the **auto**;

(4)  To whom, or on whose behalf, benefits are:

    (a)  Payable under any **compensation law** for the same **accident**; or

    (b)  Required by any **compensation law** to be provided for the same **accident**; or

(5)  While **occupying** a **motor vehicle owned** by **you** or any **resident** of **your** household that is not the **described auto** under this policy.

## LIMIT OF **OUR** LIABILITY UNDER THIS COVERAGE

The limit of liability for this coverage is stated in the INSURING AGREEMENT FOR THIS COVERAGE and is subject to the following limitation:

(1)  No **person** may recover duplicate benefits for the same elements of loss by combining this coverage with other coverage provided by:

    (a)  This policy;
    (b)  Another policy issued by **us**;
    (c)  A policy issued by another company; or
    (d)  Another state's law that mandates personal injury protection or similar benefits.

## INSURANCE WITH OTHER COMPANIES

(1)  If one or more other company's motor vehicle income disability benefits insurance also applies to a **claim** made by **you** or a **relative** under Coverage K, **we** will pay the proportionate share that **our** limit of liability bears to the total limits of all such applicable coverages up to the highest limit of any one of the applicable policies.

(2)  If one or more other company's motor vehicle income disability benefits insurance also applies to a **claim** made by someone other than **you** or a **relative**, and that insurance provides the amount of coverage mandated by section 23-89-202 of the Arkansas Code, no coverage is provided under Coverage K.

(3)  If one or more other company's motor vehicle income disability insurance also applies to a **claim** made by someone other than **you** or a **relative**, and that insurance provides less than the amount of coverage mandated by section 23-89-202 of the Arkansas Code, Coverage K will provide only the balance of the amount required by the statute.

(4)  An **insured** may not recover duplicate benefits for the same elements of loss under this and any similar insurance.

## PAYMENTS UNDER THIS COVERAGE

**We** will pay the **insured** or any **person** authorized by a court having jurisdiction over this obligation to collect on behalf of the **insured**.

## **OUR** RIGHT TO REIMBURSEMENT UNDER THIS COVERAGE

If **we** make a payment to any **insured** under this coverage and that **insured** recovers an amount of money from a **person** responsible for the **bodily injury** on which **our** payment was based, the **insured** agrees to reimburse **us** the amount of **our** payment less **our** proportionate share of the cost of collecting the money.  Any **insured** who accepts a payment under this coverage agrees, and acknowledges, that **we** have a lien upon any tort recovery, related to the same **bodily injury**, he or she may make.

**We** will not enforce **our** rights under this provision until the **insured** who received **our** payment is fully compensated for his, her, or its, loss.

## UNDERINSURED MOTORISTS ENDORSEMENT

| <u>Endorsement Number</u> | <u>Limits of Liability</u> |
|---|---|
| A-110.3-A | $_____ Per Person, $_____ Per Accident |

The following coverage is provided under this policy only if it is shown in the **Declarations**; and it is subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy.

INTRODUCTORY NOTE:
This coverage provides a monetary benefit that supplements the amount paid to an **insured** when he or she sustains a covered **bodily injury**. It does not cover **claims** based on **property damage**.

INSURING AGREEMENT
Subject to all conditions, exclusions, and limitations of **our** liability, stated in this policy, if the **owner** or **operator** of an **underinsured motor vehicle** is legally obligated to pay **damages**, **we** will pay the **uncompensated damages**.

AMENDED AND ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT
As used in this coverage,
(1) **Damages** means the full amount of money owed to an **insured** for his, or her, own **bodily injuries** that directly resulted from an **accident** caused in whole, or in part, by the **use** of an **underinsured motor vehicle**. It is the total amount collectively due from all **persons** who caused the **bodily injuries**.
    **Damages** does not include:
    (a) **Punitive damages** awarded in favor of an **insured**; or
    (b) Money payable to any **insured** as a result of an agreement of any kind.
(2) **Insured** means:
    (a) **You**;
    (b) **Relatives**; and
    (c) **Individuals occupying** the **described auto** who are listed in the **Declarations** as an "additional listed insured"; if neither they, nor their **spouse**, **owns** a **motor vehicle**.
(3) **Substitute payment** means payment, to the **insured**, of an amount equal to the tentative settlement amount agreed to by the **insured** and the **owner** or **operator** of the **underinsured motor vehicle** or that **person's** liability insurer.
(4) **Uncompensated damages** means the part of the **damages** that exceeds the total amount paid, or payable, to the **insured** by:
    (a) All **persons** legally obligated to pay the **damages**; and
    (b) The insurers of those **persons**.

ADDITIONAL DUTIES OF ALL **INSUREDS** IN THE EVENT OF A **CLAIM** UNDER THIS COVERAGE
(1) If an **insured**, or an **insured's** legal representative, makes a claim for **damages** against any **person**, and a part of those **damages** may be payable under this coverage, that **insured** must promptly notify **us** of that claim.
(2) If an **insured**, or an **insured's** legal representative, institutes a lawsuit seeking **damages** against any **person**, and a part of those **damages** may be payable under this coverage, that **insured** must promptly send **us** a copy of the summons, petition, complaint, or other process issued in connection with that legal action.

EXHAUSTION OF UNDERLYING LIABILITY INSURANCE COVERAGES
No insurance is provided under this coverage until:
(1) Settlements or payment of judgments have exhausted the limits of liability of all liability bonds and liability policies, that apply to the **insured's damages**; or
(2) The **insured** making the **claim** under this policy complied with the section below headed: "SUBSTITUTION OF COVERAGES".

SUBSTITUTION OF COVERAGES
If a tentative settlement is reached by an **insured** and the **owner** or **operator** of the **underinsured motor vehicle** or that **person's** liability insurer, for all or any portion of the **damages**, the **insured** may elect to give **us** written notice of that pending settlement. The **insured** may also elect not to give **us** such notice. One of the following provisions applies depending upon the **insured's** election.
(1) If that **insured** elects to give **us** such notice it must be sent to **us** by certified mail, return receipt requested, and must include:
    (a) Written documentation of his or her pecuniary losses, including copies of all medical bills.
    (b) Written authorization granting all medical providers and employers the right to provide **us** with his or her employment and medical records.
    (c) Written confirmation from the **owner** or **operator** of the **underinsured motor vehicle** or that **person's** liability insurer as to the amount of that **person's** bond or liability insurance limits and the terms of the tentative settlement. In no event shall evidence of the referenced liability limits, the fact that a tentative settlement was reached, or the terms of such tentative settlement be admissible in any civil action except actions by:
        (i) **Us** to enforce the subrogation rights contemplated by this coverage;
        (ii) The **insured** to enforce the settlement;
        (iii) The **owner** or **operator** of the **underinsured motor vehicle** against his, her, or its own bond provider or liability insurer to enforce the settlement; and
        (iv) The **insured** against **us** to enforce the terms of this coverage.

Within 30 days of the receipt of such written notice **we** may, at **our** option, make **substitute payment**.

If **we** elect to make **substitute payment**, **we** will be subrogated to that insured's right of recovery against the **owner** or **operator** of the **underinsured motor vehicle** and the provisions of this coverage headed: "TRUST AGREEMENT" will apply. **Our** subrogation right applies only to the amount by which that recovery exceeds the **damages** less any amount **we** paid the **insured** under this coverage.

If **we** elect not to make **substitute payment**, or fail to do so within 30 days, **we** will have no right to the proceeds of any settlement or judgment between **our insured** and the **owner** or **operator** of the **underinsured motor vehicle** or that **person's**

Exhibit D
(Continued on Next Page)

liability insurer. Further, **we** will have no right to recover the amount **we** paid under this coverage, and no right to refuse payment to **our insured** under this coverage because of the settlement made by that **insured**.

If **we** are the motor vehicle liability insurance carrier for the **owner** or **operator** of the **underinsured motor vehicle**, the requirements of the section of this coverage headed "SUBSTITUTION OF COVERAGES" are waived. In that event, the **insured** may proceed with a **claim** under this coverage at any time after settlement of the liability claim against the **owner** or **operator** of the **underinsured motor vehicle**.

(2) If that **insured** elects not to give **us** such notice, and concludes the tentative settlement by releasing any **owner** or **operator** of the **underinsured motor vehicle**, no insurance is provided under this coverage.

## EXCLUSIONS FROM THIS COVERAGE
This coverage does not apply:
(1) If, without **our** written consent, the **insured** or the **insured's** legal representative releases any of the **insured's** rights of recovery against the **owner** or **operator** of an **underinsured motor vehicle** who is, or may be, legally liable to that **insured** for **damages** unless the **insured** has complied with the section above headed: "SUBSTITUTION OF COVERAGES".
(2) If any part of the **damages** resulted from **bodily injury** sustained while the **insured** is **occupying** a **motor vehicle** without **permission**.
(3) If any part of the **damages** resulted from **bodily injury** sustained while the **insured** is **occupying** a **motor vehicle**, other than the **described auto**, **owned** by any **insured** or a **resident** of any **insured's** household.
(4) If any part of **damages** resulted from **bodily injury** sustained while the **insured** is **occupying** a **motor vehicle**, other than the **described auto**, that any **insured**, or a **resident** of any **insured's** household has **general consent to use**.
(5) If any part of **damages** resulted from **bodily injury** that a reasonable **individual** would have expected to result from the **insured's** own intentional acts.
(6) To that part of the **damages** that are payable to, or on behalf of, such **insured** under any **compensation law**.
(7) To that part of the **damages** for which compensation to, or on behalf of, the **insured** is required under any applicable **compensation law**.
(8) If **our** payment under this coverage would benefit any insurer or self-insurer under any **compensation law**.
(9) If an applicable statute of limitations bars an **insured's claim** against the **owner** or **operator** of the **underinsured motor vehicle** who is responsible for the **damages**.
(10) If any part of the **damages** are sustained while the **owner** or **operator** of the **described auto**, or the **operator** of a **non-owned auto**, was providing a **prearranged ride**.

## NUMBER OF **PERSONS** INSURED
The insurance under this coverage applies separately to each **insured**. The presentation of **claims** by more than one **insured** will not increase **our** limit of liability for any one **occurrence**.

## LIMITS OF **OUR** LIABILITY
The maximum limits of liability for this coverage are stated in the

**Declarations** and are subject to the following limitations:
(1) The limit shown for "each **person**" is the limit of **our** liability for the **claim** of any one **insured**. This limit applies to all **claims** made by others resulting from that **insured's bodily injury**, whether direct or derivative in nature.
(2) The limit shown for "each **accident**" is subject to the limit for "each **person**" and is the total limit of **our** liability for the **claims** of two or more **individuals**. This limit applies to all **claims** made by others resulting from those **insureds' bodily injuries**, whether direct or derivative.
(3) Regardless of the number of:
   (a) Vehicles stated in the **Declarations**;
   (b) Premiums stated in the **Declaration**;
   (c) Vehicles insured by **us**;
   (d) Vehicles involved in the **accident**;
   (e) **Persons** covered;
   (f) **Claims** made; or
   (g) Premiums paid;
   the limits of liability for this coverage for two or more **motor vehicles** insured under the same policy, or separate policies, may not be added together, combined, or stacked, to determine the total limit of insurance coverage available to any **insured** for any one **occurrence**.

## INSURANCE WITH OTHER COMPANIES
If a **claim** covered by this policy is also covered by a policy issued by a company other than the Shelter Mutual Insurance Company or the Shelter General Insurance Company, the coverage under this policy will apply only as excess over such other insurance. If it is impossible to reconcile the provisions of all applicable policies to determine the order in which benefits are payable under each, the benefits of this policy will be prorated with all such other policies based on the limits of each, up to the total limit of all applicable policies.

## PAYMENTS UNDER THIS COVERAGE
**We** will pay any amount due under this coverage to:
(1) The **insured**;
(2) The **insured's** parent or guardian if the **insured** is a minor;
(3) The **person** legally authorized to maintain and settle a **claim** for the **insured's** death, if **our** payment is for **damages** resulting from the **insured's** death;
(4) The **person** legally authorized to receive the payment for the **insured**;
(5) Any holder of a perfected lien that obligates **us** to pay that lienholder;
(6) Medicare, Tricare, Medicaid, or any other entity, if that entity has a right of recovery under applicable federal or state law; or
(7) Any **person** legally entitled to receive the payment because of a lawful assignment by the **insured**.

**We** may, at **our** option, pay any amount due under this coverage to any **person** listed above and that payment will fully discharge **our** obligations under this coverage.

## TRUST AGREEMENT
If **we** make any payment under this coverage:
(1) **We** will be entitled to the proceeds of any settlement or judgment the **insured** obtains from or **against** any **person** for the **damages** that **our** payment was based upon. **Our** right extends only to the amount of **our** payment.

Exhibit D                    (Continued on Next Page)

(2)  Any **person** who **we** pay will hold in trust, for **our** benefit, all rights of recovery that the **insured** has, or later acquires, against any other **person** who may be responsible for the **damages** that **our** payment was based upon.

(3)  Any **person we** pay will do whatever is necessary to secure all rights of recovery that the **insured** may have against any other **person** who may be responsible for the **damages** that **our** payment was based upon, and will do nothing to prejudice those rights.

(4)  If **we** request it in writing, any **person we** pay, and any **insured** on whose behalf the payment was made, will take, through any representative designated by **us**, such action as may be necessary or appropriate to recover **our** payment from any **person** legally responsible for the **bodily injury our** payment was based upon. Such action may be taken in the name of the **insured** on whose behalf **our** payment was made. In the event of a recovery, **we** will be reimbursed, to the extent of that recovery, the expenses, costs, and attorneys' fees **we** incurred in connection with the action, in addition to the amounts **we** paid.

(5)  Any **person** who **we** pay will execute and deliver to **us** such legal instruments and papers as may be appropriate to secure the rights and obligations created by this subsection.

(6)  **We** will not enforce **our** rights under this provision until the **insured** who received **our** payment is fully compensated for his, her, or its, loss.

A-110.3-A

Exhibit D